[Civ. No. 20793. Fourth Dist., Div. Two. Mar. 12, 1980.]

CANAL-RANDOLPH ANAHEIM, INC., Plaintiff and Respondent, v.
J. E. WILKOSKI, Defendant and Appellant;
JOSEPH M. MURPHY, Third Party Claimant and Appellant;
CHRISTIAN R. VAN DEUSEN, Third Party Claimant and Respondent.

COUNSEL

James E. Wilkoski for Defendant and Appellant.

Joseph M. Murphy, in pro. per., for Third Party Claimant and Appellant.

Millar & Hodges and Richard W. Millar, Jr., for Plaintiff and Respondent.

Christian R. Van Deusen, in pro. per., for Third Party Claimant and Respondent.

OPINION

TAMURA, Acting P. J.—This is an appeal from a judgment denying a claim of exemption and adjudicating several third party claims to office equipment, furnishings and law books of J. E. Wilkoski, a law corporation, which were subject to a levy under a writ of execution on a judgment against the law corporation. The principal issue, which appears to be one of first impression, is whether a law corporation is entitled to the benefit of the exemption provided by Code of Civil Procedure section 690.4.[1]

---

[1]All references hereinafter are to the Code of Civil Procedure unless otherwise indicated.

Section 690.4 provides: "To the maximum aggregate actual cash value of two thousand five hundred dollars ($2,500), over and above all liens and encumbrances on such

The record on appeal consists only of the judgment roll and a limited engrossed settled statement. The engrossed settled statement relates only to proceedings under the third party claim of appellant Joseph M. Murphy. According to this rather limited record, defendant J. E. Wilkoski, a professional law corporation (Corporation) rented a suite of business offices from plaintiff Canal-Randolph Anaheim, Inc. (Canal-Randolph). Defendant fell considerably behind in its rental payments. In January of 1978, plaintiff obtained a judgment against the Corporation in an unlawful detainer action; the judgment ordered restoration of the premises and payment of the sum of $6,125 plus interest. Pursuant to a writ of possession, the sheriff removed the personalty (equipment, furnishings, books) remaining in the suite of offices and placed them in storage. About a week later, the sheriff levied on this personalty pursuant to a writ of execution obtained by plaintiff.

James E. Wilkoski filed a claim of exemption on behalf of the Corporation as to certain items claiming that they were exempt under section 690.4 because they were essential for the carrying on of the profession (law) by which the Corporation earned its livelihood.

Joseph M. Murphy, a law clerk employed by Corporation, filed a third party claim for other items, including the collection of law books. The engrossed settled statement reveals that Murphy and Wilkoski had been close associates for some years and that Murphy had been employed by the Corporation as a law clerk. Murphy testified that Wilkoski, acting on behalf of the Corporation, sold the claimed items to him in February 1978 and that the consideration for the sale was the cancellation of a debt owed him by the Corporation for past due wages and an agreement to pay the balance owing at $250 per week. The settled statement reveals that Murphy knew at time of purchase that Corporation had no money to pay its lawyers to pursue an appeal in the unlawful detainer action, that a writ of possession had been served on the Corporation and that Wilkoski wished to retain the equipment, furniture and books belonging to the Corporation but feared losing them

---

items at the time of any levy of attachment or execution thereon, any combination of the following: tools, implements, instruments, uniforms, furnishings, books, equipment, one commercial fishing boat and net, one commercial motor vehicle reasonably necessary to and actually used in a commercial activity, and other personal property ordinarily and reasonably necessary to, and personally owned and used by, the debtor exclusively in the exercise of the trade, calling, or profession by which he earns his livelihood."

through execution since the Corporation did not have the financial ability to satisfy its judgment debt. The contract of sale was an oral agreement; no bill of sale or other paper documented the agreement. The items supposedly purchased by Murphy remained at the corporate offices until removed to storage by the sheriff. At the storage company, the items claimed by Murphy were listed on a separate inventory from the other personalty sent to storage from the Corporation's offices.

Darlene M. Wilkoski made a third party claim to still other items of personalty which had been levied upon, including some office furniture and a photocopy machine. In her verified claim, she stated that she was the absolute owner of these items and that she acquired them by purchase. The record contains no additional evidence regarding this claim.

Finally, Christian R. Van Deusen filed a third party claim to certain items. Van Deusen's claim overlapped those of the Corporation, Murphy and Ms. Wilkoski and included the collection of law books as well as certain furnishings and equipment. In a declaration filed with his claim, Van Deusen stated that he is an attorney; that he and Wilkoski had agreed to purchase the law practice of Maher & Moore in 1974; that he had furnished Wilkoski with the cash ($5,400) to purchase the practice and thus should be adjudged the beneficial owner of the property to which he laid claim. In support of his claim, Van Deusen furnished a copy of a memorandum of understanding concerning the purchase of the Maher & Moore practice executed by Wilkoski and Van Deusen in July of 1974 and a disbursal form authorizing the Union Bank to deposit $1,250 of Van Deusen's personal funds in the commercial account of "Wilkoski & Van Deusen, Attorneys At Law Trust Account."

The above described exemption and third party claims came on for hearing pursuant to sections 689 and 690.50. After extended hearings, the court rendered its decision as follows: Denied Murphy's third party claim on the ground "that the transfer was a fraudulent transfer as to the creditors of the corporation"; denied Ms. Wilkoski's third party claim because she failed to carry her burden of proof; denied the Corporation's claim of exemption; and granted Van Deusen's claim as to an undivided one-half interest in 12 of the items listed in the storage company's inventory since Corporation held these items in trust for him pursuant to a resulting trust.[2] The court retained jurisdiction over the

[2]The memorandum of intended decision contained the following findings and conclusions about Van Deusen's claim:

claims matter until counsel for plaintiff Canal-Randolph, defendant Corporation and claimant Van Deusen had agreed upon the particular items of inventory which were subject to Van Deusen's undivided one-half interest. After negotiations among the three interested parties and their attorneys, a hearing was held to determine claimant Van Deusen's entitlement to particular items. A judgment was ultimately entered denying the claims of Murphy, Ms. Wilkoski and Corporation and adjudging Van Deusen vested with title to an undivided one-half interest in certain of the levied-upon items. Defendant Corporation and claimant Murphy appeal from this judgment.[3]

Corporation contends that the trial court erred in failing to apply the "livelihood" exemption provisions of section 690.4 to a professional corporation; that the trial court exceeded its jurisdiction in applying the doctrine of "resulting trust" to establish title in a third party in a hearing conducted pursuant to section 689;[4] that the evidence was insuffici-

"This ruling is based on these findings: claimant Van Deusen lent $2,500.00, represented by a promissory note, to James E. Wilkoski to be used with other money of claimant's to acquire the property in question from the Maher law firm, title thereto to stand in the name of the professional corporation formed by Wilkoski and claimant known as Wilkoski-Van Deusen, A Professional Corporation; that it was agreed that such payment would entitle each to one-half of the stock of that corporation; that such payment was made and the property was acquired by the corporation on terms agreed to in writing (Exhibit 3); that no stock was ever issued to claimant despite his demand; that Wilkoski has not repaid the $2,500.00 to claimant; that the corporation's name has been changed to J. E. Wilkoski, A Professional Corporation, defendant herein; that stock has been issued to Wilkoski by the corporation.

"The Court concludes that the corporation under its present name, defendant herein, holds an undivided one-half interest in said property in trust for claimant (Civil Code Section 853; Kinnert vs. Kinnert [sic] 81 C.A. 2d 919); that claimant's interest is paramount to the rights of the creditor of the corporation, the corporation being a trustee as to claimant-beneficiary (Owings vs. Laughran [sic] 53 C.A.2d 789, 791.)"

[3]Corporation and Murphy both contend that the judgment in the unlawful detainer action is void due to the trial court's lack of jurisdiction so that the writ of execution and the exemption and third party claim judgments, based on that "underlying judgment," are also void. The validity of the unlawful detainer judgment is not properly before us. Appellants' notices of appeal state that they are appealing the judgment of October 10, 1978, determining their exemption and third party claims. Consequently, their appeal must be limited to issues raised in that proceeding. (See § 904.1, appealable judgments and orders, and *Commercial & Farmers Nat. Bk.* v. *Hetrick* (1976) 64 Cal.App.3d 158, 162, fn. 2 [134 Cal.Rptr. 285], judgment pursuant to § 689 is appealable as a final judgment in a special proceeding.) We note also that appellants have had three opportunities for a hearing on the issue of the voidability of the unlawful detainer judgment for lack of jurisdiction—the courts have entertained two motions to vacate the judgment and an appeal from the judgment was taken but was dismissed for failure to perfect the same. Thus, appellants may be said to have already enjoyed three "bites at the apple."

[4]Plaintiff, Canal-Randolph, does not dispute the trial court's recognition of a resulting trust; only defendant Corporation raises this issue.

ent to support the finding of a resulting trust and, for the first time on appeal, contends that Van Deusen's third party claim was barred by laches and estoppel. Claimant Murphy contends that the evidence adduced at the hearing was wholly insufficient to support the conclusion that the transfer of personalty from the Corporation to him was a fraudulent conveyance. ▆ ▆▆▆ The issues of laches and estoppel are not properly before us on appeal since they were not raised at the hearing.[5] In the analysis set out below, we have concluded that the remaining issues are without merit and that the judgment should be affirmed.[6]

## I

### PROFESSIONAL CORPORATION'S CLAIM OF EXEMPTION UNDER SECTION 690.4

Section 690.4 is one of the "exemption" statutes found in sections 690.1 to 690.29. Property listed in these code sections is exempt from execution when a claim of exemption is made by a judgment debtor or defendant. (§ 690.[7]) Section 690.4 states in pertinent part that any tools of a trade or calling such as instruments, furnishings or books "and other personal property ordinarily and reasonably necessary to, and personally owned and used by, the debtor exclusively in the exercise of the trade, calling, or profession by which he earns his livelihood" up to a cash value of $2,500 are exempt from attachment or levy.

---

[5] A party may not present a new theory for the first time on appeal that "...contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial...." (*Panopulos v. Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738]; *City of Newport Beach v. Sasse* (1970) 9 Cal.App.3d 803, 812 [88 Cal.Rptr. 476].)

[6] In its notice of appeal, Corporation also purports to appeal from that part of the judgment in which Ms. Wilkoski's third party claim was denied. However, Ms. Wilkoski has filed no notice of appeal. Since Corporation as owner of the personal property levied upon actually benefited from denial of Ms. Wilkoski's third party claim, we will not entertain an appeal by the Corporation of that denial. (See § 902; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 114, p. 4114, and authorities cited therein: Any "aggrieved party" may appeal.)

[7] Section 690 provides: "(a) Except as otherwise specifically provided, the property mentioned in Sections 690.1 to 690.29, inclusive, is exempt from execution when claim for exemption is made to the same by the judgment debtor or defendant as hereinafter in Section 690.50 provided.

"(b) Whenever it is specifically provided in Section 690.1 to 690.29, inclusive, that

■ The Corporation contends that section 690.4 should apply to professional corporations who are debtors, as well as to individuals who find themselves in financial straits. As we explain below, our analysis of the language, context and history of the exemption statutes, of case law and statutory development on the analogous question of the right of members of a partnership to exemptions, of persuasive authority on the issue of corporate exemptions from another jurisdiction, of the views of commentators on the California law, and of the structure and purposes of professional corporations, especially those involving the legal profession, convinces us that the Legislature did not intend for professional corporations to be entitled to a claim of exemption under section 690.4.

In our search for legislative intent, we turn first to the language of section 690.4 and to a consideration of its meaning in the context of the entire exemption scheme found in sections 690.1-690.29. (E.g., *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal. Rptr. 144, 514 P.2d 1224]; *West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 607-608 [86 Cal.Rptr. 793, 469 P.2d 665]; *Livingston v. Heydon* (1972) 27 Cal.App.3d 672, 677 [104 Cal.Rptr. 83].) Initially, we note that section 690.4 contains the phrases "personally owned and used by . . . the debtor" and "he earns his livelihood." This terminology connotes a reference to an individual person who needs his tools or implements to eke out a living for self and family, rather than to a corporate entity. The other exemptions in the 690 series strongly reinforce this connotation. Nearly all of them refer to items which would ordinarily be the possessions or entitlements of an individual such as a cemetery plot, workers' compensation and disability benefits, and prosthetic appliances. (§§ 690.5, 690.11, 690.15, 690.24.) The only sections which do not refer to these ordinarily individually owned items relate to real and personal property owned by public agencies. (§§ 690.22, 690.26, 690.27, 690.29.)

An examination of pertinent case law reveals that since the enactment of the exemption laws in California, the courts have consistently construed the Legislature's intent in providing such exemptions to be that of protecting the individual debtor and his family and of enabling the debtor to pursue a vocation and thus stave off the poverty which would otherwise result from his improvidence in financial matters.

the filing of a claim of exemption is not required, the property so mentioned in each such section shall not be subject to levy of attachment or execution in any manner.

"(c) As used in Sections 690.1 to 690.31, inclusive, 'debtor' means debtor, claimant, defendant, cross-defendant, or judgment debtor.

"(d) As used in Sections 690.1 to 690.31, inclusive, 'creditor' means the plaintiff or the person in whose favor the writ runs."

(E.g., *In re McManus* (1890) 87 Cal. 292 [25 P. 413]; *Cowan et al.* v. *Their Creditors* (1888) 77 Cal. 403 [19 P. 755]; *Bertozzi* v. *Swisher* (1938) 27 Cal.App.2d 739, 742 [81 P.2d 1016]; see *Wade* v. *Rathbun* (1938) 23 Cal.App.2d Supp. 758, 760 [67 P.2d 765]; 14 Ops.Cal.Atty. Gen. 50, 52.) When confronted as early as 1888 with the question of whether members of a partnership should be able to make claims of exemption upon the partnership's tools or implements of livelihood, our Supreme Court responded with an emphatic negative: "'It appears to us that the statute is intended to apply only to the case of a single and individual debtor. The exemption which it gives is strictly personal.... [P]roperty belonging to the firm cannot be said to belong to either partner as his separate property....The exemption, in our opinion, is several, and not joint. It applies to the debtor in the singular number, and is personal and individual only. If he desires to form a partnership ...he must take the precaution to retain exclusive ownership of his tools and implements, allowing the use of them to his associates, or he will lose entirely the benefit of the statutory exemptions as to that kind of property.'" (*Cowan et al* v. *Their Creditors, supra*, 77 Cal. 403, 406-407, quoting from *Pond* v. *Kimball* (1869) 101 Mass. 105.) This view is held by a large majority of jurisdictions (see Annot. (1919) 4 A.L.R. 300), has been incorporated into the Uniform Partnership Act (see *In re Reese* (N.D.Cal. 1963) 223 F.Supp. 626, 628, fn. 4), and is now embodied in the California Corporations Code, section 15025, subdivision (2)(c).

Though the question of a corporation's right to a claim of exemption under section 690.4 is one of first impression in the state courts, it has been met in a federal case involving the bankruptcy of a California corporation, *In re SA Auto-Jack, Inc.* (N.D.Cal. 1974) 380 F.Supp. 99. In *Auto-Jack*, the court considered the language of the statute, California cases interpreting the purpose of the exemption statutes (*Robert* v. *Adams* (1869) 38 Cal. 383, 385; *Bertozzi* v. *Swisher, supra*, 27 Cal. App.2d 739, 742) and a commentator on California law (5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 25, pp. 3405-3406.) It concluded that the statute applied only to natural persons since the purpose of the statute was to protect an individual debtor and his family, not to bestow "exemption benefits on corporations." (*In re SA Auto-Jack, Inc., supra*, 380 F.Supp. 99, 100.) While the federal district court's ruling is not controlling in this jurisdiction, its succinct reasoning is persuasive.

Likewise, commentators on California law uniformly conclude that the exemption statutes are meant to be personal and individual. Witkin states that "[t]he exemptions of the judgment debtor (C.C.P. 690 et seq.) are for the personal benefit of the debtor. The property itself would ordinarily be subject to execution, but the debtor, for the protection of himself and his family, is allowed to retain all or part of it." (5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 25, pp. 3405-3406, italics deleted.) Other commentators without exception view and refer to the exemption statutes as personal and individual in nature. (See e.g., Comment, *California's New Household Goods Exemption and the Problem of Personal Accountability* (1972) 12 Santa Clara L.Rev. 155, referring to an exempt debtor's "personal wealth"; State Bar Committee on Debtor and Creditor, *Modernization of Statutory Exemptions* (1967) 42 State Bar J. 869, 871, speaking of the "individual debtor"; see also Trost, *Recent Developments in Debtor Protection* (1971) 46 State Bar J. 639, 643-644; Comment, *Creditors Remedies* (1973) 61 Cal.L.Rev. 406, 417.) Particularly telling is the phraseology used by the California Law Revision Commission in referring to protection provided the debtor by the exemption and attachment statutes: "Consumer necessities." (11 Cal. Law Revision Com. Rep. pp. 524, 531.)

Turning to an examination of the structure and purpose of professional corporations, we note initially that they are organized under the General Corporation Law to render services in a single profession regulated by the state. (Corp. Code, § 13401.) Professional corporations are subject to the provisions of the General Corporation Law governing all California corporations (Corp. Code, § 13403) and differ materially from other corporations only in that they offer a specific licensed service to the public (see Corp. Code, §§ 13400-13410, the Moscone-Knox Professional Corporation Act). Law corporations must be registered with the State Bar and are governed by sections 6160-6172 of the California Business and Professions Code but otherwise are simply one type of professional corporation. They are similar to all corporations in that they enjoy centralized management, continuity of life, limited liability, free transferability of interest and the right to engage in any lawful business. They also enjoy such corporate tax benefits as profit-sharing, pension plans, and thrift plans. (See Peterson, White & Jones, *Professional Corporations* (1968) 43 State Bar J. 884, 889-894.) That professional corporations such as the law corporation have a right to all the commercial benefits and protections afforded to corporate entities argues strongly that the Legislature did not intend that such corporations

be covered as well by protective statutes which it designed for the individual consumer and his family to preserve a modicum of their "personal wealth" from their own improvidence.

The weight and persuasiveness of the above authorities have convinced us that professional corporations, like partnerships, are not entitled to the "livelihood" exemption provided in section 690.4. Like our Supreme Court, we conclude that one who "'desires to form [a corporation]...must take the precaution to retain exclusive ownership of his tools and implements,...or he will lose entirely the benefit of the statutory exemptions as to that kind of property.'" (*Cowan et al v. Their Creditors, supra,* 77 Cal. 403, 407, quoting *Pond* v. *Kimball,* 101 Mass. 105.) Liberal construction may not be utilized to include within a statute that which the Legislature did not intend.[8]

## II

### THE THIRD PARTY CLAIM
### BASED ON RESULTING TRUST

Section 689 states in pertinent part that "[w]henever a verified third party claim is delivered to the officer as herein provided, upon levy of execution of attachment..., the plaintiff, or the person in whose favor the writ runs, the third party claimant, or any one or more joint third party claimants, shall be entitled to a hearing in the court in which the action is pending or from which the writ issued *for the purpose of determining title to the property in question.*" (Italics added.) Defendant contends that the trial court exceeded its jurisdiction in recognizing third party claimant Van Deusen's right to certain personalty under a resulting trust theory because a section 689 hearing is a special

---

[8]Defendant's argument that *Lake Forest Community Assn.* v. *County of Orange* (1978) 86 Cal.App.3d 394 [150 Cal.Rptr. 286], supports its thesis that the exemption statutes refer to classes of property rather than a certain type of debtor is specious. In *Lake Forest,* we were asked to interpret the meaning of the phrase "any person" found in Revenue and Taxation Code section 224 in order to determine whether "household furnishings" owned by a corporation were exempt from taxation. We held that "household furnishings" referred to a class of property and was not restricted to those furnishings owned by a class of individuals who are "householders," basing our interpretation on the fact that section 19 of the Revenue and Taxation Code expressly provides that "'Person' includes any person, firm, partnership, association, corporation, company, syndicate, estate, trust, business trust, or organization of any kind." (*Id.,* at p. 404.) Nowhere in the section 690 series of debtors' exemptions do we find any such indication of legislative intent concerning the term "judgment debtor." We conclude that section 690.4 refers to the individual consumer debtor and does not entitle professional corporations to a claim of exemption.

summary proceeding limited to determining title to the property in question. As we explain below, we conclude that the contention lacks merit.

Our Supreme Court has stated that a "third party claim [is] in the nature of an action to quiet title to or to determine adverse claims to personal property, and hence [is] one in equity." (*Fulton* v. *Webb* (1937) 9 Cal.2d 726, 728 [72 P.2d 744].) Our appellate courts have also held that a plaintiff may establish the superiority of his equitable right to defendant's legal title by specifically pleading the facts in quiet title proceedings. (3 Witkin, Cal. Procedure (2d ed. 1971) § 531, p. 2180, and cases cited therein.) In the case at bench, Van Deusen specifically set out in his verified claim the events giving rise to the resulting trust and presented evidence in support of this claim. Thus, he proved to the satisfaction of the trier of fact that the Corporation, though holder of bare legal title, was not entitled to the "beneficial interest" in the property; that he (Van Deusen) was the holder of that interest, known as the "equitable lien," "interest," or "title." (See *Holder* v. *Williams* (1959) 167 Cal.App.2d 313 [334 P.2d 291]; *Lowenthal* v. *Kunz* (1951) 104 Cal.App.2d 181 [231 P.2d 62]; *Zakaessian* v. *Zakaessian* (1945) 70 Cal.App.2d 721 [161 P.2d 677]; Bogert, Trusts and Trustees (2d rev. ed. 1979) ch. 11, § 183; 1 Pomeroy, Equity Jurisprudence (5th ed.) § 155, p. 210.) Since our high court has equated the section 689 proceeding to a quiet title action, we see no valid reason why the court should be precluded from recognizing an equitable right in settling these adverse claims to private property. We conclude that the court did not exceed its jurisdiction in holding that defendant held a resulting trust for Van Deusen. (See *Gintel* v. *Green* (1958) 165 Cal. App.2d 723, 725 [332 P.2d 298], the existence of an equitable assignment giving rise to an enforceable right recognized in a 689 hearing.)

Defendant contends that the evidence adduced was insufficient to support the existence of a resulting trust in favor of claimant Van Deusen. It argues that the evidence actually reveals that Van Deusen lent Wilkoski the money to purchase the law practice and that a resulting trust cannot be predicated upon a loan. ▮ It is not our role to reweigh evidence, resolve conflicts or redetermine the credibility of witnesses; our function, rather, is to determine whether there is any substantial evidence, conflicting though it may be, to support the decision reached by the court. (E.g., *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]; *Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 64 [107 Cal.Rptr. 45, 507 P.2d 653,

94 A.L.R.3d 1059]; *Nestle v. Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]; see 6 Witkin, Cal. Procedure (2d ed. 1971) § 245, pp. 4236-4238.) ▮ In the instant case, there is sufficient evidence to support the trial court's finding that a resulting trust existed. The court had before it Van Deusen's declaration, the memorandum of understanding concerning the purchase of the law practice executed by Wilkoski and Van Deusen, and the disbursal order directing transfer of funds from Van Deusen's personal account to that of the Wilkoski-Van Deusen law firm.

## III

### FRAUDULENT CONVEYANCE

"The determination of the character of a conveyance as fraudulent or otherwise involves the consideration of various elements and factors, such as the intention of the parties, the financial condition of the transferor, the consideration or lack of consideration for the transfer,...the relationship of the parties," and the actual delivery or lack of delivery of the transferred property to the transferee. (16 Cal.Jur.3d § 287, p. 654.) These various elements and factors have been brought together in the Uniform Fraudulent Conveyance Act, which has been adopted in California in sections 3439 to 3440 of the Civil Code. ▮ Claimant Murphy contends that he was a bona fide purchaser of certain of the items levied upon by plaintiff.[9] He argues that he paid a "fair consideration" for the furniture and books in accordance with Civil Code section 3439.03,[10] and that there was insufficient evidence to support a finding that the transfer was fraudulent. We disagree.

Civil Code section 3439.04 states that "[e]very conveyance made ...by a person who is or will be thereby rendered insolvent is fraudu-

---

[9]In his brief, claimant Murphy argues that $900 worth of the property transferred to him by defendant is subject to a preferred laborer's claim under section 1206, and thus not reachable by other creditors. We cannot entertain this argument, however, since the record does not reflect that Murphy ever filed a preferred laborer's claim.

[10]Civil Code section 3439.03 provides: "Fair consideration is given for property, or obligation:

"(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

lent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." The settled statement shows that Wilkoski Corporation was unable to pay its lawyers to pursue an appeal of the unlawful detainer action and that its president feared the loss of all the Corporation's personalty by levy because the Corporation could not pay its judgment debt. Moreover, the settled statement also shows that Murphy knew of all these financial difficulties before the transfer. This fact puts in question his "good faith" in negotiating the transfer, so that the trial court could have reasonably concluded that he did not give "fair consideration" for the items as called for in section 3439.03.

Civil Code section 3439.07 states that "[e]very conveyance made ...with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Claimant argues that neither he nor transferor Corporation had an actual intent to defraud. However, since the settled statement shows that James E. Wilkoski wanted to retain the levied-upon items for the Corporation's law offices, but feared losing them through execution before the transfer, and that claimant was aware of this concern, the trial court could have reasonably inferred a fraudulent intent on the part of both claimant and defendant to shield the items from levy.

Civil Code section 3440 states in pertinent part that "[e]very transfer of personal property...made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the things transferred, is conclusively presumed fraudulent and void as against the transferor's creditors while he remains in possession...." Claimant Murphy admits that the items he purchased from Wilkoski Corporation remained in place in the Corporation's offices for two weeks after purchase, until the Corporation was evicted by the sheriff and all the personalty found in the office suite was placed in storage by plaintiff. He argues that he did not take delivery of the materials because he was busy taking the bar exam and that the fact he had the items listed on a separate inventory at the storage company was sufficient evidence of delivery to overcome the presumption of fraud occasioned by nondelivery. However, the facts that there was no bill of sale or written agreement to mark the transfer, that there was no recordation or other publication of the transfer, that the parties to the transfer were in an employer-employee relationship and the other cir-

cumstances surrounding the alleged sale were sufficient to raise the reasonable inference that a delivery and continued change of possession of the personalty in question had never been intended or effected. (E.g., *Sequeira* v. *Collins* (1908) 153 Cal. 426 [95 P. 876]; *Hickey* v. *Coschina* (1901) 133 Cal. 81 [65 P. 313]; *Godchaux* v. *Mulford* (1864) 26 Cal. 316; 16 Cal.Jur.3d, Creditors' Rights, §§ 322-326, and cases cited therein.)

There was ample evidence from which the court could reasonably infer that a fraudulent conveyance had taken place between Wilkoski Corporation and claimant Murphy. As we stated earlier, our role is not to reweigh the evidence but to determine its substantiality. The substantiality of the evidence revealed by claimant's settled statement is incontrovertible.

The judgment is affirmed.

Morris, J., and Campbell, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.