[No. B002037. Second Dist., Div. Seven. Oct. 30, 1984.]

JACOB A. MEYER, Plaintiff and Respondent, v.
BYRON JACKSON, INC., et al., Defendants and Appellants.

COUNSEL

Donnelly, Clark & Chase and William C. Moritz for Defendants and Appellants.

Oshman, Brownfield & Smith, George E. Brownfield and Gerald H.B. Kane, Jr., for Plaintiff and Respondent.

OPINION

LILLIE, P. J.—Byron Jackson, Inc. (now BJ-Hughes, Inc.) and Byron Jackson Service Equipment Co. (now BJ-Hughes Service Equipment Co.) appeal from judgment entered on a jury verdict against them and in favor of their former employee, Jacob Meyer, for damages for wrongful discharge.

Jacob Meyer worked for appellants for a period of 10 years in various capacities finally becoming a mechanic welder. Meyer injured his back and shoulder while working in February 1972. He reported the injury to his foreman, who sent him to the company doctor where he received limited treatment. Meyer sought further treatment from another doctor at his own cost. He was given a corset which he wears daily to help his back. Meyer also developed a hernia in August 1972 which he believed was caused by the lifting he did at work. He reported the hernia to appellants, who insisted he file a claim under the group insurance policy as nonwork-related, rather than file a claim for workers' compensation. He did so, and received only 80 percent reimbursement for the cost of his hernia surgery.

In September 1972 he filed two workers' compensation applications, one for the shoulder and back injury, and one for the lifting injury resulting in the hernia surgery. The two cases were consolidated for hearing. At the August 1973 hearing, Meyer testified as to the occurrence of both injuries, and described the pain he had in his shoulder and low back, as well as the various nervous complaints which arose after these injuries. Appellants' plant superintendent testified that Meyer never complained about physical disabilities at work, and that he performed his job cheerfully and without

any observable impairment. The referee allowed the parties further time to submit rebuttal evidence as to these claims.

The superintendent was apparently surprised to hear of Meyer's physical complaints, and reported them to appellants after the hearing. Meyer continued to perform his job satisfactorily; appellants made no inquiries as to the safety of allowing him to continue in his position, nor did they modify his duties or criticize his performance at work. A second hearing was had on March 13, 1974. Meyer testified that his physical problems still remained, and further described his anxiety problems. The referee referred Meyer to independent medical examiners in the fields of psychiatry and orthopedics for testing. The plant supervisor also attended this hearing and appellants received a summary of its content. No change was made in Meyer's work duties nor was any inquiry made as to any safety risk he might pose in his job.

The referee issued his decision on July 12, 1974, giving Meyer a 32 percent disability rating, which was a composite of psychiatric disability and residual disability in his right shoulder and low back. He was awarded his medical expenses and temporary disability benefits for time lost from work. The decision included no work restrictions or recommendations for change in occupation. Approximately two weeks later, the plant superintendent was ordered by appellants' personnel director to terminate Meyer because he had a 32 percent disability and was too high a risk at his job. No consultation had been done with the superintendent or with the foreman, the two men who directly supervised and observed Meyer's work, prior to the decision to terminate him.

Meyer was terminated and brought the within civil action alleging appellants terminated him from his employment solely because he filed workers' compensation applications and testified in connection with such applications. He alleged his discharge was contrary to the public policy set forth in Labor Code section 132a, and sought damages for loss of income and benefits, as well as general damages and punitive damages. Appellants moved for judgment on the pleadings on the ground that section 132a gave exclusive jurisdiction of workers' compensation-related discrimination claims to the Workers' Compensation Appeals Board. The motion was granted. Meyer appealed from the resulting judgment, and the Court of Appeal reversed the judgment and remanded the cause for trial on the merits. (*Meyer* v. *Byron Jackson, Inc.*, 2d Civ. No. 58517, hereinafter *Meyer I.*)

A trial was had, and the jury returned a verdict awarding Meyer $97,000 in financial losses, $32,000 for his emotional distress, and $100,000 in

punitive damages. Judgment was entered, appellants' postjudgment motions were denied, and they now appeal.

I

LAW OF THE CASE

█ Appellants initially raise the issue of jurisdiction. In *Meyer I,* the Court of Appeal held the superior court had jurisdiction over Meyer's claim for discriminatory discharge inasmuch as Labor Code section 132a, as amended in 1972, did not provide him with a remedy for the economic and emotional harm resulting from the discharge. █ This holding would ordinarily control this case under the doctrine of the law of the case, which provides that when an appellate court has rendered a decision and states in its opinion a rule of law necessary to the decision, that rule is to be followed in all subsequent proceedings in the same action. (*People* v. *Scott* (1976) 16 Cal.3d 242, 246 [128 Cal.Rptr. 39, 546 P.2d 327].) █ But appellants argue this case comes within the recognized exceptions to the doctrine's application: where there has been an intervening or contemporaneous change in the law or the establishment of a new precedent by controlling authority (*Chase Brass & Copper Co.* v. *Franchise Tax Bd.* (1977) 70 Cal.App.3d 457, 465 [138 Cal.Rptr. 901]); or where its application will lead to a harsh or inequitable result. (*Selby Constructors, Inc.* v. *McCarthy* (1979) 91 Cal.App.3d 517, 522 [154 Cal.Rptr. 164].) █ We conclude these exceptions are inapplicable in the present case.

█ The intervening change in law upon which appellants rely is the case of *Portillo* v. *G.T. Price Products, Inc.* (1982) 131 Cal.App.3d 285, 290 [182 Cal.Rptr. 291], in which this district held Labor Code section 132a was the exclusive remedy available to an employee upon her claim of wrongful discharge because of her filing a workers' compensation claim for injury. This holding is clearly contrary to the *Meyer I* decision. However, the *Portillo* case is based on consideration of the statute as amended in 1978; *Meyer I* is based on the 1972 version of the statute, in effect at the time of Meyer's claim and therefore to be applied to his case. (See *State of California* v. *Ind. Acc. Com.* (1957) 48 Cal.2d 355, 361 [310 P.2d 1]; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 1028, 1031 [149 Cal.Rptr. 880]; Lab. Code, § 4453.5.)

The differences in the two statutes are significant. The 1972 version provides in pertinent part: "Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because the latter has filed . . . an application with the appeals board, or, because the employee has received a rating, award or settlement, . . . is guilty of a

misdemeanor and subject to the provisions of Section 4553." The only remedies available in the section are misdemeanor charges against the employer, and, under section 4553, an increase of 50 percent in compensation benefits for the injury. The employee may thereby receive an increase in compensation for the injury itself, but he is afforded absolutely no remedy for the loss of wages and emotional harm resulting from the wrongful discharge. It is the absence of these remedies that provides the basis for the court's holding in *Meyer I* that section 132a does not preclude a civil suit for damages by an employee discharged under that section.

In contrast, section 132a as amended in 1978 *does* provide remedies for the employee. "Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." A successful action under this amended section could make the wronged employee whole again. With such a full remedy available under the Labor Code, the *Portillo* court logically concluded the Legislature intended to provide by statute the exclusive remedy for a worker discharged in retaliation for exercising workers' compensation rights. (*Portillo, supra,* 131 Cal.App.3d at p. 287.) But this holding may not properly be extended to Meyer's claim under the 1972 statute; he had no right to reinstatement, and no right to reimbursement for lost wages and work benefits under the statute. The *Meyer I* conclusion that in the absence of a full remedy by statute Meyer could seek relief by civil action remains unchanged by the later *Portillo* case based on a later statute. We find no basis for an exception to the doctrine of the law of the case based on the *Portillo* decision.

■■■ We also find no harsh or inequitable result from the application of the law of the case to this action. Appellants argue they will unjustly face civil liability that no other employer will face in the future. Obviously where there is a change in the law a wrongdoer in one year may face liability different from that facing a wrongdoer in a succeeding year. To consider such difference a manifest injustice ignores the reality of the legislative process, and requires the question of liability to be set in stone for all time despite changing concepts of tort law and public policy. This is patently unreasonable and provides no basis for an exception to the doctrine of the law of the case. The present action is properly governed by the law of the case set forth in *Meyer I*.

II

NLRB PREEMPTION

■■■ Appellants further attack the *Meyer I* decision on the ground that if Meyer's remedies under state workers' compensation laws were inadequate,

then the National Labor Relations Board, not the superior court, had exclusive jurisdiction over his claim. This contention has no merit.

■ The origin of appellants' argument is the rule set forth by the United States Supreme Court in *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 245 [3 L.Ed.2d 775, 783, 79 S.Ct. 773]: "When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Section 7 of the NLRA provides in pertinent part: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." (29 U.S.C. § 157.) Section 8 provides in applicable part: "(a) It shall be an unfair labor practice for an employer— [¶] (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; . . ." (29 U.S.C. § 158(a)(1).)

■ The recognized prerequisite to protection under these sections is "concerted activity." This term clearly covers activities of employees who join together to achieve common goals; what has been less clear, however, is when the action of an individual employee is linked to the actions of his fellow employees in such a manner that it may be said to be "concerted action." (*NLRB* v. *City Disposal Systems, Inc.* (1984) 465 U.S. 822, — [79 L.Ed.2d 839, 845, 104 S.Ct. 1505].) It is the resolution of that issue that determines appellants' contention.

Appellants rely on *Krispy Kreme Doughnut Corp. and Bakery, Confectionary and Tobacco Workers Union, AFL-CIO, CLC* (1979) 245 NLRB No. 135, in which the NLRB held it an unfair labor practice under the NLRA for an employer to discharge a worker for expressing his intention to file a workers' compensation claim. The board reasoned that workers' compensation benefits arise out of the employment relationship and are of common interest to other employees; thus, the intended pursuit of a workers' compensation claim by an individual and his resultant discharge were protected concerted activity within the meaning of the NLRA. However, upon review of that decision by the Fourth Circuit Court of Appeals, enforcement of the board's order was denied. The court rejected the board's fiction of "constructive concerted activity," noting there was no evidence that the solitary employee intended or contemplated any group activity or that he was acting on behalf of or as representative of other employees; at most his action could be said to have been for the benefit of other employees only in a theoretical sense. (*Krispy Kreme Doughnut Corp.* v. *N.L.R.B.* (4th

Cir. 1980) 635 F.2d 304, 308.) This presumption of "concerted activity" in the absence of any showing of some contemplation of group action was also rejected in *Peabody Galion* v. *Dollar* (10th Cir. 1981) 666 F.2d 1309, 1316, and in *Flick* v. *General Host Corp.* (N.D.Ill. 1983) 573 F.Supp. 1086, 1088-1089. In fact, even the NLRB recently rejected the "constructive concerted action" theory underlying its *Krispy Kreme* decision, stating: "In general, to find an employee's activity to be 'concerted,' we shall require that it be engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." (*Meyers Industries, Inc. and Kenneth P. Prill* (1984) 268 NLRB No. 73.)

■ We find no evidence in the record before us even suggesting that Meyer acted with or on the authority of any other employees in pursuing his workers' compensation claim against appellants. In the absence of the necessary "concerted activity," his claim for wrongful discharge based on his workers' compensation claim is not even arguably within the jurisdiction of the NLRB. The case was properly before the superior court.

### III

### LIMITATION OF REMEDIES

■ Appellants contend Meyer's remedies should be limited to those set forth in Labor Code section 132a as amended in 1978 and 1982. By this argument, they seek reversal of the award of $32,000 as damages for emotional distress and of $100,000 as punitive damages. *Meyer I,* which is the law of this case, held that damages for discriminatory discharge are *not* provided under workers' compensation statutes; thus Meyer's remedies were not limited by Labor Code section 132a as in effect in 1974. The amended versions of the statute are also inapplicable. ■ "Subject to circumstances which indicate a legislative intent to the contrary, 'the law in force at the time of the injury is to be taken as the measure of the injured person's right of recovery' in workers' compensation. . . . Hence statutory change in workers' compensation which is 'substantive in character' i.e., that which 'enlarge[s] [or diminishes] the employee's existing rights and the employer's corresponding obligations' does not act retrospectively absent a clear showing of legislative intent that it should do so. [Citations.]" (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd., supra,* 85 Cal.App.3d 1028, 1031.)

■ The 1978 amendment to section 132a provided new remedies to the discharged employee, reinstatement and reimbursement for wages and benefits, thus enlarging an employee's existing rights and an employer's corresponding obligations. The 1982 amendment set a limit on the amount of

increased compensation to which an employee would be entitled, thus diminishing an employee's rights and an employer's corresponding obligations. These changes are clearly substantive in nature, and thus may not be applied retrospectively in the absence of a clear showing of legislative intent for such application.

We find no such legislative intent, but rather a clearly enunciated statement disapproving retrospectivity as to changes in workers' compensation benefits: "Benefits payable on account of an injury shall not be affected by a subsequent change in amounts of indemnity payable under this division, and shall be continued as authorized, and in the amounts provided for, by the law in effect at the time the injury giving rise to the right to such benefits occurred." (Lab. Code, § 4453.5.) Meyer's damages are not to be limited by a retrospective application of the amendments to section 132a.

IV

PUNITIVE DAMAGES

■ Meyer's action for wrongful discharge is a tort action (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]) for which all relief generally available in noncontractual actions, including punitive damages, can be recovered. (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 220-221 [185 Cal.Rptr. 270, 649 P.2d 912]; *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 304 [188 Cal.Rptr. 159]; *Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69, 77 [86 Cal.Rptr. 401]; Civ. Code, § 3294.)

■ Appellants assert the evidence is insufficient to support a verdict for punitive damages, as there was no evidence supporting a finding of malice. ■ In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party and in support of the judgment. The appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].)

Civil Code section 3294, subdivision (c)(1) defines malice as "conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others." (See also *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 895 [157 Cal.Rptr. 693, 598 P.2d 854].) ■ Having reviewed

the record, we find there was substantial evidence that appellants acted in conscious disregard of Meyer's rights when they discharged him.

Meyer testified at trial that when he reported his work-caused hernia to appellants, they insisted he file a group insurance claim and complete a state disability claim, rather than file a workers' compensation claim, even though he would thereby receive only 80 percent coverage for his medical costs, rather than 100 percent under workers' compensation. Despite Meyer's obvious objection to this, he did comply. On the state disability claim form, Meyer indicated the disability was caused by his work, by a "climbing skid"; this information was later scratched out by someone other than Meyer, so that no reference to work-caused injury was part of the claim. Because the claim was processed under group insurance, Meyer was required to pay approximately $3,000 for uncovered medical costs. An explanation of appellants' insistence on processing the claim as nonwork related was presented at trial. Appellants' workers' compensation carrier was a mutual insurance company, meaning that any savings on compensation claims would be savings to the policy holders themselves, as they are the "stockholders" of the company. Also, if appellants had a high loss ratio under the compensation policy, they would likely have to pay a higher premium for coverage. The evidence supports a finding that even at this early stage in the history of the case, appellants acted with conscious disregard of Meyer's right to be fully compensated for medical costs arising out of his work-related injury, attempting instead to keep their loss ratio low for their own benefit.

Meyer did, of course, eventually file workers' compensation claims for his hernia and shoulder injuries. He testified that from the time he filed these claims until his termination, he was frequently "borrowed out" to perform heavy lifting jobs. These jobs did not require his skills as a mechanic welder, and he was the only mechanic welder borrowed that way. This seemed to be a sort of game by appellants, which had an effect on Meyer's nerves. He had not been subjected to such interruptions of his duties prior to filing his claims. This evidence further supports the implication that appellants acted in conscious disregard of Meyer's rights.

Meyer's foreman and the plant superintendent, the two men most directly in contact with Meyer's work, both testified that Meyer's work was good before his injury and remained good after his injury. After the date of injury, these men observed Meyer working without any impairment, performing his job as well as he had before. Neither one considered Meyer any sort of a hazard on the job, either to his own safety or the safety of others, and had never advised anyone that he posed a safety risk or should not be performing certain duties. In fact, they were shocked to hear Meyer's

testimony at the WCAB hearing, as he had never complained of the physical pain to which he testified, and they had noticed no physical impairment in the performance of his job.

Appellants were aware of Meyer's physical complaints as set forth at the WCAB hearings, based on the oral reports from the superintendent and on the written summaries of the evidence placed in their file within 15 days after the hearings. Yet they took no action to ease his work load, made no inquiries as to the safety of his continued work, and in no way criticized his work, from the time they first learned of his problems until the workers' compensation rating and award was issued a year later. However, just two weeks after the disability award was made, the plant superintendent was ordered by appellants' personnel director to terminate Meyer because he had a 32 percent disability rating and was a bad risk. Neither the superintendent nor the foreman had been consulted about this decision or about the safety risk posed by Meyer, and both were upset by the termination order, as it was unsupported by their own observations of Meyer's work. There is a strong implication from this evidence that appellants acted not out of concern for safety, which logically would have been triggered by their first notice of Meyer's claimed physical disability, but in retaliation for his successful pursuit of a workers' compensation claim resulting in an award in his favor.

Appellants purportedly relied upon the 32 percent disability rating as the basis for their conclusion that Meyer was a bad risk and should be terminated. However, at approximately the same time that they fired Meyer, they also filed a verified petition for reconsideration with the WCAB, contesting the rating and award, a portion of which was read into the record at trial: "Referee Terry has described the disability in accordance with the words used by Doctor Naftulin. It is respectfully submitted that the very slight to slight category used by Doctor Naftulin is not in this case a proper category for Mr. Meyer's anxiety problems described by the doctor. The definition of slight anxiety would be an anxiety which would cause some handicap in the performance of the activity that produced this condition. It is apparent from the testimony of the applicant that he has no impairment in his capacity to work. He does a job without any apparent impairment in the performance of that job. He admits that he is able to do a good job and he does it in an outward [sic] cheerful manner. So he's apparently able to overcome any psychosis or neurosis that he may have when he is not on the premises of the employer. It is respectfully submitted that the capacity of the applicant to overcome whatever problem he may have is such that he does not have a compensable disability in the area of a psychiatric state." This petition was prepared by appellants' counsel at the time and was placed in appellants' file within 15 days of preparation, and appellants did not protest the

assertions made under oath in the petition. This petition seriously undercuts appellants' assertion that the termination was based on grave safety concerns.

An examination of the actual WCAB decision also weakens appellants' claim of safety concerns. The decision includes no work restrictions at all, and no recommendation for further medical treatment. The referee specifically relied upon the psychiatric evaluation by Dr. Naftulin in reaching his total disability rating; Dr. Naftulin summarized the psychiatric disability at 10-15 percent. The decision also states that two other physicians expressed the opinion that Meyer's primary problem was psychiatric and that no further medical treatment would be beneficial. The evidence of Meyer's continuing satisfactory performance of his work from the date of injury to the date of termination, the absence of any recommendation by medical experts or the WCAB referee that he be restricted in his duties, and a total lack of inquiry or observation by appellants as to Meyer's actual job and safety performance, support a finding that Meyer's termination was not based on appellants' safety concerns. ■■■ Malice may be proved by implication, by indirect evidence from which the jury may draw inferences. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 923, fn. 6 [148 Cal.Rptr. 389, 582 P.2d 980].) An inference of malice finds substantial support in the record in this case.

## V

### Mitigation of Damages

■■■ Appellants' final contention is that although Meyer did seek reemployment after his discharge in 1974, he stopped his job search sometime in 1977, thereby failing to mitigate his damages for economic loss from that date forward.

■■■ A wrongfully discharged employee has a duty to mitigate damages by seeking other employment through the exercise of reasonable diligence. (*California School Employees Assn.* v. *Personnel Commission* (1973) 30 Cal.App.3d 241, 246 [106 Cal.Rptr. 283].) ■■■ The evidence clearly shows Meyer sought reemployment with appellants, and also sought employment at several other companies. He applied for a wide variety of jobs for which he was qualified, and even attended school for retraining to improve his employment opportunities. He was totally unsuccessful, and admittedly ceased searching for work after 1977, when he felt the possibilities were exhausted. At that time he was 50 years old, his only "reference" from appellants was a letter stating he was discharged due to his disability, and he had no recent work history. Appellants argue that the job search

ended because Meyer was caring for his ailing wife, not because he was unable to find employment. ▇ However, our duty is not to reweigh the evidence, but simply to determine whether there is any substantial evidence, conflicting though it may be, to support the decision reached by the court. (*Canal-Randolph Anaheim, Inc.* v. *J. E. Wilkoski* (1980) 103 Cal.App.3d 282, 294 [163 Cal.Rptr. 30].) ▇ We find that there is substantial evidence that Meyer exercised reasonable diligence in seeking employment to mitigate his damages.

### DISPOSITION

The judgment is affirmed.

Thompson, J., and Johnson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 20, 1985.