[No. A033588. First Dist., Div. Five. Apr. 1, 1988.]

WILLIAM STEPHENS, JR., Plaintiff and Appellant, v. COLDWELL BANKER COMMERCIAL GROUP, INC., et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Part V of this opinion, excluding the judgment, does not meet the standards for publication. (Cal. Rules of Court, rule 976b.)

COUNSEL

Steven G. Zieff and Mark S. Rudy for Plaintiff and Appellant.

Wallace L. Rosvall and Ellis D. Reiter, Jr., for Defendants and Appellants.

OPINION

LOW, P. J.—Plaintiff William Stephens brought this action against his employer, Coldwell Banker Commercial Group, Inc., and Coldwell Banker Real Estate Management Services (collectively referred to as defendant), claiming he was demoted because of his age, in violation of California's Fair Employment and Housing Act. (Gov. Code, § 12900 et seq.) A jury found defendant had unlawfully discriminated against plaintiff and awarded plaintiff $325,035. Plaintiff cross-appeals on the ground his motion for attorney fees was denied. We hold that California courts may rely on the federal Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.) in interpreting analogous provisions of California's Fair Employment and Housing Act. We conclude the jury's verdict was fully supported and affirm the trial court's denial of attorney fees, but award attorney fees on appeal.

Plaintiff began working for defendant in 1951 as a property manager, and in 1954 he became building manager for the Flood Building in San Francisco. In 1975, at the building owner's request, plaintiff moved his office to the building and was given the additional title of "real estate manager" with increased responsibilities for the day-to-day operation of the Flood Building. As the real estate manager, plaintiff was entitled to additional compensation in the form of leasing commissions and incentive pay based on the rents collected in the building.

In June 1981, John Mock, age 37, was selected to be district manager of defendant's San Francisco/Oakland office. Mock supervised the real estate managers, including plaintiff who was then 63 years of age. The Flood

Building was the major account under Mock's supervision, and plaintiff was the oldest and most highly compensated manager in the district. On January 12, 1982, Mock informed plaintiff that he was being replaced as real estate manager at the Flood Building by 37-year-old John Leones, and that 45 percent of plaintiff's compensation based on leasing commissions and incentive fees for the Flood Building would be taken from him. However, plaintiff would remain on site at the Flood Building and continue his duties as the building manager at a reduced salary. It was stipulated by the parties that as a result of the demotion plaintiff lost $22,934 in compensation.

Plaintiff believed he had been demoted because of his age and filed a charge of discrimination with the Department of Fair Employment and Housing. (Gov. Code, §§ 12930, 12960.) Subsequently, he received a right-to-sue letter; and on April 8, 1983, he filed a complaint alleging unlawful age discrimination under California's Fair Employment and Housing Act. After trial, the jury returned a verdict for plaintiff's lost compensation at $25,035, damages for plaintiff's emotional distress at $100,000, and punitive damages at $200,000.

I

The Fair Employment and Housing Act provides that the opportunity to hold employment without discrimination because of age is a civil right. (Gov. Code, § 12921.) Because the language and objectives of California's Fair Employment and Housing Act as it relates to age discrimination closely parallel the language and objectives of the federal Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.), we refer to federal decisions where appropriate. (*Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544, 552 [173 Cal.Rptr. 539].) Both parties rely on the legal analysis developed by the federal cases, and we note that the precedential decisions of the Fair Employment and Housing Commission dealing with age discrimination, which "serve as precedent" in interpreting the state act, similarly rely upon cases brought under the federal act. (Gov. Code, § 12935, subd. (h); see *Department of Fair Employment & Housing* v. *Smitty's Coffee Shop* (1984-1985 Precedential Dec.) Dec. No. 84-25; *Department of Fair Employment & Housing* v. *Carefree Ranch Mobile Home Park* (1984-1985 Precedential Dec.) Dec. No. 84-31; *Department of Fair Employment & Housing* v. *United Airlines, Inc.* (1982-1983 Precedential Dec.) Dec. No. 82-05.)

In most employment discrimination cases, direct evidence of the employer's discriminatory intent is unavailable or difficult to acquire. The United States Supreme Court has set forth an indirect method of proof that relies on presumptions and shifting burdens. (*McDonnell Douglas Corp.* v. *Green*

(1973) 411 U.S. 792, 802 [36 L.Ed.2d 668, 678, 93 S.Ct. 1817]; *Texas Dept. of Community Affairs* v. *Burdine* (1981) 450 U.S. 248, 252-253 [67 L.Ed.2d 207, 214-215, 101 S.Ct. 1089].) This analytical framework has been adopted by California courts in evaluating claims of employment discrimination under state legislation. (See, e.g., *Mixon* v. *Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1317-1319 [237 Cal.Rptr. 884]; *Ibarbia* v. *Regents of University of California* (1987) 191 Cal.App.3d 1318, 1326-1328 [237 Cal.Rptr. 92]; *County of Alameda* v. *Fair Employment & Housing Com.* (1984) 153 Cal.App.3d 499, 504 [200 Cal.Rptr. 381].) ■ The trial court properly employed this method of proving age discrimination in the instant case.

To establish his prima facie case of employment discrimination, plaintiff had the burden of proving by a preponderance of the evidence that he was within a protected class, that he was performing satisfactorily as real estate manager at the Flood Building, and that he was demoted "under circumstances which give rise to an inference of unlawful discrimination." (*Texas Dept. of Community Affairs* v. *Burdine, supra,* 450 U.S. at p. 253 [67 L.Ed.2d at p. 215], fn. omitted.) Once the prima facie case was established, a presumption of discrimination was raised and the burden shifted to defendant to produce evidence that plaintiff was demoted for a legitimate nondiscriminatory reason. (*Id.,* at p. 254 [67 L.Ed.2d at p. 215-216].) Plaintiff then had an opportunity to prove that "a discriminatory reason more likely motivated the employer" or that the employer's proffered explanation was "unworthy of credence." (*Id.,* at p. 256 [67 L.Ed.2d at p. 217].) The plaintiff's burden of showing that the employer's explanation was a pretext for discrimination "merges with the ultimate burden of persuading the court that [the employee] has been the victim of intentional discrimination." (*Ibid.*)

■ Defendant contends that the jury could not reasonably conclude that age was a determining factor in plaintiff's demotion and that the jury verdict must be overturned as contrary to the evidence and based on speculation and conjecture. We disagree. Plaintiff was replaced by a person 26 years younger. Defendant concedes plaintiff produced substantial evidence of satisfactory job performance. This evidence was sufficient to establish a prima facie case and shifted the burden to defendant to produce evidence of a legitimate nondiscriminatory reason for demoting plaintiff. (*Maxfield* v. *Sinclair Intern.* (3d Cir. 1985) 766 F.2d 788, 792-793; *Douglas* v. *Anderson* (9th Cir. 1981) 656 F.2d 528, 533.) Defendant asserted plaintiff was replaced as real estate manager at the Flood Building because his performance was substandard. Defendant tried to show that plaintiff was demoted because of the large number of rental delinquencies at the Flood Building,

the high janitorial and maintenance costs, and plaintiff's failure to comply with requests made by his supervisor. Plaintiff claimed his performance as real estate manager at the Flood Building was at all times adequate and defendant's criticisms were unworthy of credence. Thus, the issue at trial was framed by these opposing factual contentions.

The jury rejected as pretextual defendant's claim that it demoted plaintiff because he was performing unsatisfactorily and held plaintiff was a victim of age discrimination. We are bound by that finding if there is substantial evidence to support it. (*Estate of Leslie* (1984) 37 Cal.3d 186, 201 [207 Cal.Rptr. 561, 689 P.2d 133].) Plaintiff began his employment with defendant in 1951 when he was in his early 30's, and remained continually employed until he retired in 1985. The jury had before it evidence that plaintiff had consistently been recognized for his outstanding job performance. In fact, plaintiff was listed as one of defendant's top 10 property managers during calendar year 1979 and as one of defendant's top 12 real estate managers for calendar year 1981. Past recognition for superior job performance is "highly relevant" to counter a company's allegations that an adverse employment action was taken because of poor job performance. (*Graefenhain* v. *Pabst Brewing Co.* (7th Cir. 1987) 827 F.2d 13, 18-19.)

Moreover, there was additional evidence that suggested defendant's explanation for plaintiff's demotion was a pretext. Shortly after becoming plaintiff's supervisor, Mock made several inquiries about plaintiff's retirement plans. He also made known his intention to get rid of "long-term nonproducers," mentioning plaintiff by name. Once it was clear plaintiff had no plans to retire, several memos were written by Mock criticizing plaintiff's management of the Flood Building. Plaintiff specifically rebutted each of Mock's claimed deficiencies in his performance and presented evidence that (1) defendant's computerized accounting system was largely responsible for the high number of rental delinquencies in the building; (2) maintenance and operational costs at the Flood Building were not inordinately high and were consistent with the wishes of Mr. Flood; and (3) he diligently attempted to comply with all requests made by his supervisor and had no reason to believe his job was in danger. John Leones testified that in his opinion the building was well run by plaintiff. Leones also testified that during the time he worked with plaintiff at the Flood Building plaintiff performed his duties and always did what was requested of him.

When Leones resigned in December 1982, less than a year after he had replaced plaintiff as real estate manager at the Flood Building, plaintiff again resumed full responsibility for the Flood Building. Although Mock was still his supervisor, no criticism was leveled at his performance. Plaintiff

continued in this capacity until October 1984, when Mr. Flood informed plaintiff that a new real estate management company would be taking over defendant's responsibilities at the Flood Building. At Mr. Flood's request to help with the transition, plaintiff remained at the Flood Building as an independent contractor for approximately six months. A jury considering this evidence might very well conclude that plaintiff's alleged incompetency in handling matters at the Flood Building was not accurate and that age was the determining factor in defendant's decision to demote plaintiff.

Defendant relies on *Lovelace* v. *Sherwin-Williams Co.* (4th Cir. 1982) 681 F.2d 230, in its effort to overturn the jury's verdict. In that case, the basis for the grant of judgment notwithstanding the verdict for the employer was the employee's failure to refute the employer's claim that his job performance was unsatisfactory. (*Id.,* at p. 245.) By contrast, plaintiff presented ample evidence to discredit defendant's assertion that plaintiff was not qualified to manage the Flood Building. We reject defendant's attempted comparison of the record developed in the instant case with the record in *Lovelace*.

## II

Defendant argues that the evidence was insufficient to support the award of damages for emotional distress. "In order to recover damages for emotional distress, the injury suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory. [Citation.] Such injury may include ' "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." [Citation.]' " (*Young* v. *Bank of America* (1983) 141 Cal.App.3d 108, 114 [190 Cal.Rptr. 122].)

Plaintiff testified that as a result of being stripped of his duties as real estate manager of the Flood Building he experienced feelings of alienation from other employees, embarrassment at having to explain his demotion to Flood Building tenants, and a general irritability and depression at home. After the demotion, he would frequently wake up in the middle of the night "rolling and tossing and perspiring," and he suffered weight loss and was diagnosed as having high blood pressure. Defendant's testimony was corroborated by other witnesses. (Cf. *Stanton* v. *Continental Casualty Co.* (1988) 197 Cal.App.3d 821, 832 [243 Cal.Rptr. 147].) John Mock, the supervisor who demoted plaintiff, admitted plaintiff appeared "very shocked [and] stunned" at the news he would be replaced as real estate manager at the Flood Building; and thereafter plaintiff was "obviously very depressed about [the] situation." Harvey Orzech, an assistant to the Flood

trustees, testified plaintiff came to him immediately after being demoted. Plaintiff was "upset about it and he didn't know whether he wanted to quit that same day or what."

California has recognized this type of injury as compensable (*Young* v. *Bank of America, supra,* 141 Cal.App.3d at pp. 114-115), and proof of the elements of the tort of intentional infliction of emotional distress is not a prerequisite for the recovery of compensatory damages for mental anguish and humiliation. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 580 [108 Cal.Rptr. 480, 510 P.2d 1032].)

### III

Defendant contends its conduct was not sufficiently deliberate, egregious and inexcusable to justify an award of punitive damages. Punitive damages may be recovered in employment discrimination cases brought under the Fair Employment and Housing Act. (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 221 [185 Cal.Rptr. 270, 649 P.2d 912].) Civil Code section 3294 authorizes an award of punitive damages where there is oppression, fraud or malice. " '[M]alice in fact, sufficient to support an award of punitive damages . . . may be established by a showing that the defendant's wrongful conduct was wilful, intentional, and done in reckless disregard of its possible results.' " (*Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 922 [114 Cal.Rptr. 622, 523 P.2d 662].)

To determine whether punitive damages were correctly awarded, we look to the whole record to determine if there is substantial evidence that defendant acted with intent to vex, injure or annoy, or with a conscious disregard of plaintiff's rights. (See *Meyer* v. *Byron Jackson, Inc.* (1984) 161 Cal.App.3d 402, 413 [207 Cal.Rptr. 663]; *Travelers Insurance Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 200 [231 Cal.Rptr. 791].)

Mock hired 37-year-old Leones without having a position open or adequate funds to pay him. Plaintiff was then singled out for replacement as the oldest and most vulnerable employee under Mock's supervision. This conduct violates public policy. Once Mock found out plaintiff had no plans to retire, he engaged in a program of unwarranted criticism of plaintiff's job performance to justify plaintiff's demotion. This demonstrates oppressive behavior. Mock's criticism of plaintiff's performance had no factual justification and had the foreseeable effect of damaging plaintiff's reputation as a property manager. Moreover, the demotion, when accomplished, was common knowledge among plaintiff's coworkers and tenants, which de-

fendant knew would subject plaintiff to embarrassment. Plaintiff's discriminatory demotion also reduced plaintiff's salary by almost half. These actions were taken knowing that plaintiff had almost 30 years of management experience at the Flood Building and he was competent to carry out his job responsibilities. In upholding an award of punitive damages for an employee in a wrongful discharge case, the court in *Rulon-Miller* v. *International Business Machines Corp.* (1984) 162 Cal.App.3d 241 [208 Cal.Rptr. 524], pointed out the employer's "conduct was intended to emphasize that [the employee] was powerless to do anything to assert [his] rights . . . . And such powerlessness is one of the most debilitating kinds of human oppression." (*Id.,* at p. 255.) The "powerlessness" described in *Rulon-Miller* was experienced by plaintiff. In sum, defendant's demotion of plaintiff exhibited a conscious disregard of plaintiff's right to be considered on his own merits without regard to age and a willingness to injure plaintiff which was both intentional and malicious.

■ The purpose of punitive damage awards is punishment and deterrence of like conduct. (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 897 [157 Cal.Rptr. 693, 598 P.2d 854].) ■ Upon reexamination of the entire record, we cannot say that the award of punitive damages was improper.

A corporate employer is liable for punitive damages for the act of oppression, fraud or malice of an officer, director, or managing agent of the corporation. (Civ. Code, § 3294, subd. (b); *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 950 [160 Cal.Rptr. 141, 603 P.2d 58]; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822 [169 Cal.Rptr. 691, 620 P.2d 141].) There is substantial evidence to find Mock was a "managing agent" within the meaning of Civil Code section 3294, subdivision (b). In *Agarwal* v. *Johnson, supra,* the court affirmed an award of punitive damages against a corporation in an analogous case. The case involved the wrongful discharge of an employee by a project services manager and his assistant, a supervisor. These two men were deemed to be employed as managing agents because "they were directly responsible for supervising [the employee's] performance and had the most immediate control over the decision to terminate him." (25 Cal.3d at p. 952.) This authority was sufficient to trigger imposition of punitive damages against the corporation. Mock was a "managing agent" within the meaning of Civil Code section 3294, subdivision (b). Mock had immediate and direct control over the decision to demote plaintiff, and he was directly responsible for evaluating plaintiff's performance. Substantial evidence exists to support the award of punitive damages against defendant as the corporate employer.

## IV

Plaintiff also appeals from the trial court's denial of his motion for attorney fees. Code of Civil Procedure section 1021 requires both winners and losers of lawsuits to bear their own legal fees in the absence of agreement or statute to the contrary. (*Covenant Mutual Ins. Co.* v. *Young* (1986) 179 Cal.App.3d 318, 321 [225 Cal.Rptr. 861].) ▉▉▉ Plaintiff argues he was statutorily entitled to attorney fees under Government Code section 12965, subdivision (b), which authorizes the court "in its discretion" to award a prevailing party in an employment discrimination claim reasonable attorney fees and costs.

Plaintiff directs our attention to identically worded fee provisions under federal civil rights statutes. (See 42 U.S.C. §§ 2000e-5(k), 1988.) In interpreting these provisions, courts have held that the "discretion to deny a fee award to a prevailing plaintiff is narrow." (*New York Gaslight Club, Inc.* v. *Carey* (1980) 447 U.S. 54, 68 [64 L.Ed.2d 723, 736-737, 100 S.Ct. 2024].) A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (*Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1266, 88 S.Ct. 964]; *Albemarle Paper Co.* v. *Moody* (1975) 422 U.S. 405, 415 [45 L.Ed.2d 280, 295, 95 S.Ct. 2362]; *Christiansburg Garment Co.* v. *EEOC* (1978) 434 U.S. 412, 417 [54 L.Ed.2d 648, 653-654, 98 S.Ct. 694].) ▉▉▉ California courts should follow interpretations of similar federal laws in awarding attorney fees in age discrimination cases. Otherwise, if fee awards were doubtful in California courts, there would exist an incentive for plaintiffs to file suits in federal courts under the federal civil rights statute with more liberal attorney fee provisions. This would effectively defeat the policy of keeping the California law as an effective remedy against age discrimination and would undermine Congress's intent "to encourage full use of state remedies." (See *New York Gaslight Club, Inc.* v. *Carey, supra,* at p. 66, fn. 6 [64 L.Ed.2d at p. 736]; *Kremer* v. *Chemical Construction Corp.* (1982) 456 U.S. 461, 468-473 [72 L.Ed.2d 262, 271-275, 102 S.Ct. 1883].)

▉▉▉ A statement of decision on the attorney fees issue was neither requested nor prepared. This court has emphasized that "[i]n the absence of a complete record, both supporting and explaining the award of fees, our review of the trial court's exercise of discretion is hindered." (*Martino* v. *Denevi* (1986) 182 Cal.App.3d 553, 560 [227 Cal.Rptr. 354].) Other courts have expressed similar frustration, going so far as to hold that "[f]ailure to request findings on specific issues results in a waiver as to those issues." (*Atari, Inc.* v. *State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 675

[216 Cal.Rptr. 267]; *Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584, 600-601 [197 Cal.Rptr. 303].)

Where the court was not asked to and did not make findings on the substantial factual issues involved in determining whether the prevailing party was entitled to attorney fees, we must infer all findings necessary to support the judgment. (See *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 233 [226 Cal.Rptr. 265]; *San Bernardino Valley Audubon Society, Inc.* v. *County of San Bernardino* (1984) 155 Cal.App.3d 738, 754-756 [202 Cal.Rptr. 423].) We cannot presume the trial court abused its discretion or found no special circumstance for denying plaintiff's request for attorney fees; and, accordingly, we affirm the trial court's order.

Plaintiff requests attorney fees on appeal. ▆▆ The question of the appropriateness of an award of attorney fees to the prevailing party on an appeal should normally be disposed of in conjunction with a decision on the merits of the appeal. (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 166 [188 Cal.Rptr. 104, 655 P.2d 306].) ▆▆ We conclude that $5,000 is a reasonable sum to be allowed plaintiff as attorney fees. (See *Roberts* v. *Brian* (1973) 30 Cal.App.3d 427, 431 [106 Cal.Rptr. 360].) Plaintiff is the prevailing party and there are no special circumstances which would render unjust an award of attorney fees on appeal. There is no reason to require plaintiff to pay the fees out of his recovery. The public policy provided in the antidiscrimination statutes is to encourage suits which protect or bring about benefits to a broad group of citizens.

V*

. . . . . . . . . . . . . . . . . .

The judgment is affirmed and plaintiff is awarded $5,000 in attorney fees on appeal.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied April 28, 1988.

---

*See footnote *ante,* page 1394.