103 F.3d 140
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank SHIELDS, Plaintiff/Counter-Defendant/Appellant,
v.
HALL-MARK ELECTRONICS CORPORATION,
Defendant/Counter-Plaintiff/Appellee.
 No. 95-55266.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1996.
Decided Dec. 10, 1996.
 
 1
 Before: FERNANDEZ and TASHIMA, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff-Appellant Frank Shields ("Shields") filed suit against Defendant-Appellee Hall-Mark Electronics Corporation ("Hall-Mark") for (1) age discrimination under the California Fair Employment and Housing Act ("FEHA"), (2) breach of employment contract, (3) negligent and intentional infliction of emotional distress, and (4) recision. Shields appeals the district court's order granting summary judgment in favor of Hall-Mark on all claims, as well as the court's denial of his motion to amend. We affirm.
 
 I.
 
 4
 Shields began working for Hall-Mark in March, 1982. At the time of his termination over ten years later, he held the position of General Sales Manager in Hall-Mark's San Diego office. On October 5, 1992, Shields was informed by his boss, Alex Celini ("Celini"), that Celini had decided to "eliminate his job." Prior to the conversation with Shields, Celini had spoken with Hall-Mark Regional Vice-President William Gold ("Gold") and Human Resource Director Michael Foltz ("Foltz") to discuss Shields' situation. Celini took notes during the conversation including the notation, "end of year: go without mngmt."
 
 
 5
 In order to close any issues related to Shields' termination, Hall-Mark prepared an initial settlement agreement stating that "Shields and Hall-Mark have mutually agreed that the termination of Shield's employment with Hall-Mark is in the best interest of both parties." Shields, however, insisted that the language be changed to reflect that "Shields' position with Hall-Mark has been eliminated." A second agreement containing that language was presented to Shields on October 16, 1992, and Hall-Mark offered Shields twenty-one days to consider its terms. As part of the agreement, Shields agreed to release (the "Release") all claims against Hall-Mark arising from his employment or separation, including specifically, any claims under the Age Discrimination in Employment Act ("ADEA"). There was, however, no agreement stating that Hall-Mark could not hire someone with the same job title or could not reconsider its decision to eliminate his job.
 
 
 6
 Shields claims that during negotiations over the Release, Foltz told him that he would not receive any monies unless he signed the Release. Shields, however, refused to sign the Release unless certain additional changes were made, and as mentioned previously, these changes were ultimately incorporated to his satisfaction. Hall-Mark suggested that Shields have an attorney review the document, but Shields chose not to do so. Shields read the entire document and acknowledged in writing that he was entering into the agreement "voluntarily, of his own free will, and without any coercion, undue influence, threat or intimidation of any kind or type whatsoever."
 
 
 7
 On October 23, 1992, after Shields signed a reaffirmation of the Release confirming his agreement to be bound by its terms, Hall-Mark gave Shields a check for $15,949.39, net after taxes, in accordance with the Release. Shields deposited the check and used the funds. He has never tendered to Hall-Mark any part of that money, but in an April 5, 1993 pleading, merely offered to restore such monies to Hall-Mark conditioned upon Hall-Mark's payment of all damages pleaded by Shields.
 
 
 8
 The alleged consideration for this Release was enhanced severance pay and forgiveness of Shield's previous debt to Hall-Mark. Under Hall-Mark's employee manual, Shields would have normally been limited to forty (40) days of severance pay. Shields, however, was paid severance in excess of forty days, amounting to a net of $2,500. Additionally, Hall-Mark had a right to require repayment from Shields of a $1,370.00 debt, but Shields accepted Hall-Mark's forgiveness of the debt as a part of the Release.
 
 
 9
 On October 30, 1992, Gold and Celini met with Trudy Johnson to discuss hiring her for their San Diego office. In fact, prior to this meeting, Celini had at least two telephone conversations and one in-person meeting with Johnson regarding employment. Shields, himself, initiated the first two interviews with Johnson which concerned her coming to work in an outside sales capacity.
 
 
 10
 On November 2, 1992 Trudy Johnson was hired and given a job with the same job title held by Shields. Unlike Shields, who had authority over outside as well as inside sales, Johnson's responsibility as General Sales Manager was to coordinate outside sales efforts only. Johnson, unlike Shields, had no supervisory duties, no authority to hire and fire, and no responsibility for profit and loss.
 
 
 11
 On April 5, 1993, Shields filed his complaint against Hall-Mark and Celini in the San Diego County Superior Court, suing for age discrimination, as well as various common law state law claims. Both defendants answered and asserted a counterclaim for reasonable attorneys' fees and costs. On January 26, 1994, Shields voluntarily dismissed Celini from the case, creating complete diversity. On February 3, 1995, Hall-Mark filed a notice of removal to the United States District Court for the Southern District of California.
 
 
 12
 Shields moved to amend the complaint to add non-diverse parties and additional claims, and for an automatic remand. The district court denied the motion, ruling that the proposed additional parties were not indispensable under Rule 19(a), that the motion to amend was not timely, and that Shields' attempt to add non-diverse parties would prejudice Hall-Mark and be an abuse of the jurisdictional process.
 
 
 13
 On April 20, 1994, Hall-Mark filed a motion for summary judgment seeking dismissal of Shields' claims. The motion was granted by Memorandum and Order filed June 15, 1994. The district court found that Shields had executed a release of his claims, and that Shields' failure to return the funds given to him pursuant to the Agreement constituted ratification of the agreement as a matter of law.
 
 
 14
 On October 21, 1994, Hall-Mark filed a motion for summary judgment seeking attorneys' fees and expenses based on its counterclaim. The court granted the motion in part and denied it in part, awarding $40,000 in attorney's fees. A final judgment was entered on January 13, 1995. Shields filed a timely notice of appeal on January 25, 1995.
 
 II.
 
 15
 Leave to amend is generally within the discretion of the district court. Rhoden v. United States, 55 F.3d 428, 432 (9th Cir.1995). We review the denial of a motion to amend for an abuse of discretion. United States v. County of San Diego, 53 F.3d 965, 969 n. 6 (9th Cir.), cert. denied, 116 S.Ct. 183 (1995).
 
 
 16
 Shields argues that the district court abused its discretion by denying his motion to amend as it relates to his attempt to amplify his allegations with regard to his cause of action for recision of the Release Agreement. Shields proposed adding allegations that he was induced to sign the release by false representations, and that within 30 days, Hall-Mark hired someone to take his position. We reject this argument.
 
 
 17
 First, the motion to amend never mentioned a desire to amplify previous allegations, and clearly stated that the only significant changes to Shields' complaint were the addition of two defendants and the additional proposed causes of action. Furthermore, the district court stated that the court "essentially agrees with defendant's perspective as to this motion." That is, the court agreed with Hall-Mark's position that it would be prejudiced by an amendment based on Shields' long standing knowledge of the facts giving rise to the proposed amendment, the status of discovery, and the timing of Hall-Mark's summary judgment motion. Accordingly, we find no abuse of discretion and affirm the district court's denial of the motion to amend.
 
 III.
 
 18
 California Civil Code § 1689 provides that a party to a contract may rescind the contract if his consent was given by mistake, or obtained through duress, menace, fraud, or undue influence. Section 1691 of the California Civil Code details the procedure for rescinding a contract under California law, providing that:
 
 
 19
 Subject to Section 1693, to effect a recision a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
 
 
 20
 (a) give notice of recision to the party as to whom he rescinds; and (b) restore to the other party everything of value which has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.
 
 
 21
 When notice of recision has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading and an action or proceeding that seeks relief based on recision shall be deemed such notice or offer or both."
 
 
 22
 (emphasis added). California Code of Civil Procedure § 1693 provides:
 
 
 23
 When relief based upon recision is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of recision unless such delay has been substantially prejudicial to the other party.
 
 
 24
 A party who has received benefits by reason of a contract that is subject to recision and who in an action or proceeding seeks relief based upon recision shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court may make a tender of restoration a condition of its judgment.
 
 
 25
 In granting summary judgment, the district court rejected Shields' argument for the applicability of these California Code sections. The court noted that Shields failed to cite a single case in which § 1691 was applied in an age discrimination release contract. The court found case law interpreting the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") "very persuasive in the context of this case," noting that many California courts look to federal ADEA cases when interpreting the FEHA. citing, Stephens v. Coldwell Banker, 199 Cal.App.3d 1394, 1399-1400 (1988). We review the grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996); Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 26
 On appeal, Shields contends that the district court erred in ignoring the California statutes. He claims that although the FEHA does not speak to the procedural issues involving recision, §§ 1691 and 1693 should be applied to the FEHA and state law claims in this case. He maintains that federal law interpreting the ADEA should have been ignored.
 
 
 27
 Hall-Mark argues that the purposes of the ADEA signal that a state law recision statute should not be enforced "in derogation of ADEA/FEHA purposes." It cites to language in Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454 (9th Cir.1986), where we explained that "federal courts should still reject specific state rules that are aberrant or hostile to federal interests," Id. at 1458, and Stephens v. Coldwell Banker, 199 Cal.App.3d 1394 (1988), where a California state appellate court held in part that "California courts may rely on the [ADEA] in interpreting analogous provisions of [the FEHA]." Id. at 1398. The Stephens court explained that:
 
 
 28
 Because the language and objectives of California's [FEHA] as it relates to age discrimination closely parallel the language and objectives of the [ADEA], we refer to federal decisions where appropriate.
 
 
 29
 Other California state courts have reached similar decisions. See Nesbit v. Pepsico, 994 F.2d 703, 704 (9th Cir.1993) (explaining that California courts have adopted the prima facie case analysis applicable to ADEA claims for claims under the FEHA). We find that it was error for the district court to disregard the California statutes dealing with recision, and instead, to refer to federal case law interpreting the ADEA to determine whether Shields had ratified the contract.
 
 
 30
 The FEHA is a California state statute. Although courts may look to the ADEA in interpreting analogous provisions of the FEHA, Hall-Mark has presented no reason why the California statute is "hostile" to the ADEA or why this is an "appropriate situation" to look to federal law for guidance. In this case, there is a specific state statute dealing with the issue of recision, which should have been applied to FEHA claim and other state common law claims. Accordingly, we find that it was error for the district court to disregard §§ 1691 and 1693 of the California Civil Code in this case.
 
 IV.
 
 31
 Despite this holding, we affirm the grant of summary judgment. We do so, because Shields has failed to provide sufficient evidence to support his allegations of fraud.
 
 
 32
 Shields alleged that in order to induce him to sign the Release, Hall-Mark made the allegedly false statement that his position was being eliminated. He claims that this evidence, along with the notes of the telephone call between Folitz and Celini, are sufficient to create a material issue of fact as to the issue of fraud. We disagree.
 
 
 33
 First, there is no evidence that Trudy Johnson replaced Shields in anything but the title he held before leaving Hall-Mark. Unlike Shields, whose primary responsibilities included outside and inside sales, Trudy Johnson was only responsible for outside sales. Furthermore, Johnson had no general supervisory authority, no power to hire or fire, and no responsibility for profits and losses. While Johnson may have had the same job title as Shields, she clearly did not "replace" Shields. Furthermore, we find that the notation "end of year, go without management," is insufficient evidence to create a disputed issue of material fact as to whether Shields is entitled to rescind the Release based on fraud.
 
 
 34
 Accordingly, we find that material facts are not in dispute on the issue of fraud, and that Shields made a knowing and voluntary waiver of his claims.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3