Filed 2/10/16  Cerda v. Central Mortgage Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JUAN CERDA, | B258465 c/w B261710 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC044738) |
| v. | |
| CENTRAL MORTGAGE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  William D. Stewart, Judge.  Affirmed as to judgment; reversed and remanded as to order.

Roberts & Roberts and Theodore K. Roberts for Plaintiff and Appellant.

Fidelity National Law Group and Teresa Y. Hillery for Defendant and Respondent.

Plaintiff and appellant Juan Cerda (plaintiff) appeals from the judgment entered in favor of defendant and respondent Central Mortgage Company (Central Mortgage) in this action for quiet title, cancellation of instruments, slander of title, and negligence. Plaintiff also appeals from the trial court's order denying his motion for attorney fees against defendant Shan Yeh (Yeh).[1]  We affirm the judgment in favor of Central Mortgage but reverse the order denying the motion for attorney fees.

## BACKGROUND

The instant action was brought by Albertina Cerda (Cerda) against Central Mortgage, Yeh, Sergio Santellan, Margarita Corleto, and others in connection with various loans that were secured by real property Cerda owned in Alhambra, California (the property).  Central Mortgage is the assignee of a $365,000 note executed by Cerda and secured by a deed of trust on the property.  Yeh is the holder of two notes executed by Corleto totaling  $52,500 also secured by deeds of trust on the property.

Cerda sought to invalidate the deed of trust held by Central Mortgage on the ground that the $365,000 loan was fraudulently obtained by Santellan and Corleto.  For similar reasons, Cerda sought to invalidate the trust deeds held by Yeh and to obtain damages against Yeh for slander of title.

Cerda died while the action was pending, and plaintiff was substituted in as the plaintiff.  Santellan also died while the action was pending, and no representative was substituted on his behalf.  Corleto received a bankruptcy discharge and was dismissed from the action before the trial commenced.  This appeal concerns plaintiff's claims against Central Mortgage and Yeh only.

**The $365,000 loan**

Cerda had known Santellan and his wife Corleto for approximately three years when she asked Santellan in late 2006 or early 2007 for his assistance in obtaining an $80,000 loan to help pay her expenses.  Santellan and Corleto operated a loan brokerage business.  They obtained for Cerda a $365,000 loan, secured by a deed of trust on the

---

[1]    Yeh is not a party to this appeal.

2

property, from Winstar Mortgage Partners, Inc. At the time Cerda entered into the loan transaction, the property was lien free.

On January 25, 2007, Santellan accompanied Cerda to Central Escrow Company, where Cerda signed the Winstar loan documents in the presence of Samantha Ma, an escrow officer and notary. Ma testified at the trial that Santellan introduced Cerda as his aunt. Ma further testified that as she reviewed the loan documents with Cerda, Santellan appeared to be translating her words into Spanish. Ma did not speak or understand Spanish. Ma reviewed with Cerda the loan amount of $365,000, as well as each line item on the estimated closing statement. Cerda raised no objection to the loan amount or any of the items on the closing statement. At her October 2011 deposition, Cerda acknowledged that the signatures on the loan documents were hers, but she did not recall signing them.

When the loan closed, some of the loan proceeds were distributed directly to credit card companies to pay indebtedness owed by Santellan and Corleto, some were used to pay closing costs, and the balance was deposited into bank accounts owned or controlled by Santellan or Corleto. None of the loan proceeds were distributed to Cerda.

The $365,000 loan and the deed of trust securing the loan were assigned to Central Mortgage in July 2007. Central Mortgage thereafter mailed monthly billing statements to Cerda at her residence address, and the monthly payments were regularly paid in 2007 and 2008. On September 30, 2009, Cerda contacted Central Mortgage's mortgage servicing company and advised Central Mortgage that her nephew, Santellan, would be calling to make a payment on the loan. Later that day, a telephonic payment was made on the loan. The September 2009 payment was the last one made on the loan, which went into default thereafter.

**The Yeh loans**

On November 30, 2007, Santellan informed Cerda that she had to sign additional loan documents. Santellan and Corleto accompanied Cerda to Central Escrow's office, where Cerda signed a grant deed transferring the property to Corleto and herself as joint tenants. On July 31, 2008, Cerda executed a quitclaim deed removing her as a joint

3

owner and making Corleto the sole owner of the property. The quitclaim deed was recorded on August 28, 2008.

After Corleto received title to the property as its sole owner, she entered into two loan transactions with Yeh, executing a $27,500 promissory note on February 3, 2010, and a $25,000 promissory note on February 11, 2010. Both notes were secured by deeds of trust on the property, but the trust deeds were not recorded until March 29, 2010. Before that date, Corleto executed a grant deed, recorded on March 22, 2010, transferring the property back to Cerda.

**The instant action**

Plaintiff commenced the instant action on February 26, 2010. The case proceeded to a court trial against Central Mortgage and Yeh. Most of the testimony presented at the trial was through deposition testimony given by Cerda, Santellan, and Corleto. At the time Cerda's depositions were taken in 2010 and 2011, she was experiencing severe memory loss problems. In addition to the deposition testimony of Cerda, Santellan, and Corleto, the trial court heard live testimony by Samantha Ma and by James McPherson, Central Mortgage's litigation supervisor.

In a statement of decision filed on April 30, 2014, the trial court concluded that plaintiff had failed to prove fraud in the execution as the basis for Cerda's claims against Central Mortgage. The trial court found Samantha Ma to be a credible witness and gave weight to her testimony that she had reviewed the loan documents with Cerda and pointed out the loan amount of $365,000.

The trial court also credited the testimony of James MacPherson, who testified that Central Mortgage sent monthly billing statements to Cerda and that loan payments were regularly received for several years. When a loan payment was missed in September 2009, Cerda contacted Central Mortgage and explained that her "nephew," Santellan, would make the payment. That payment was subsequently received and recorded in Central Mortgage's books.

With regard to plaintiff's slander of title claim against Yeh, the trial court found there was no evidence that Yeh acted maliciously and with intent to defame by recording

4

his deeds of trust. The court found, however, that plaintiff was entitled to cancel the trust deeds held by Yeh because the trust deeds were recorded after the recordation of the grant deed conveying the property from Corleto to Cerda and there was no evidence that Yeh was a bona fide encumbrancer.

On June 10, 2014, judgment was entered in favor of Central Mortgage and against plaintiff. That same judgment cancelled the deeds of trust recorded by Yeh and awarded attorney fees against him in an amount to be determined in a subsequent motion for such fees.

Plaintiff filed a motion for attorney fees under Civil Code section 1717, arguing that each of the deeds of trust cancelled by the trial court contained provisions allowing the beneficiary to recover attorney fees in the event of the borrower's default. Yeh opposed the motion on the ground that plaintiff's claims to quiet title, cancellation of the deeds of trust, and for slander of title were not claims "on the contract" entitling him to an attorney fee award under Civil Code section 1717.

Following an October 17, 2014 hearing, the trial court denied plaintiff's motion for attorney fees. The court's minute order states the reason for its denial as follows: "The authorities cited by plaintiff do not support the notion that a plaintiff who is a true owner of real property may recover 'on the contract' against a good faith encumbrance holder who loaned money and took a trust deed from one who had obtained title fraudulently from the owner and who transferred the property back to the true owner before the encumbrance holder recorded his trust deed, even where an interim lis pendens had been recorded. The court recalls that plaintiff did not call Mr. Yeh or anyone else to establish his lack of good faith in advancing moneys to Ms. Corleto or his involvement in the numerous schemes directed at the original plaintiff by others." On its own motion, the trial court reconsidered the form of judgment and ordered plaintiff to submit an amended judgment deleting the paragraph pertaining to the attorney fee award against Yeh. An amended judgment deleting the attorney fee award against Yeh was entered on November 19, 2014.

5

Plaintiff filed separate appeals, in August 2014 and January 2015, with respect to the judgment entered in favor of Central Mortgage and the denial of his motion for attorney fees against Yeh. We ordered the two appeals to be consolidated.

## DISCUSSION

### I. Fraud in the execution

The trial court found that Central Mortgage was entitled to its lien rights under the deed of trust because plaintiff failed to prove fraud in the execution. When the issue on appeal turns on a failure of proof at trial, the question for the reviewing court is whether the evidence compels a finding in favor of the appellant as a matter of law. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 (*Sonic Mfg*).) "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation.]" (*Id*. at p. 466.)

There are two different theories of contract fraud -- fraud in the inducement and fraud in the execution. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415.) "When a plaintiff alleges fraud in the inducement, the plaintiff is asserting that it understood the contract it was signing, but that its consent to the contract was induced by fraud. In contrast, when a plaintiff alleges fraud in the execution, the plaintiff is asserting that it was deceived as to the very nature of contract execution, and did not know what it was signing. A contract fraudulently induced is voidable; but a contract fraudulently executed is void." (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 958.)

Plaintiff's evidence regarding Cerda's lack of understanding as to the nature of the $365,000 loan transaction or the loan documents she signed was neither uncontradicted nor unimpeached. Plaintiff's evidence was contradicted by Samantha Ma's testimony concerning Cerda's execution of the loan documents. Ma testified that she reviewed the loan documents with Cerda and pointed to and verbally told Cerda the loan amount. The trial court found Ma to be a credible witness. Although Santellan spoke to Cerda in

6

Spanish while she reviewed and signed the loan documents, Cerda testified in deposition that she could both read and speak English and that English was her primary language.

Plaintiff's evidence was also contradicted by the testimony of James MacPherson, who testified that Central Mortgage sent billing statements to Cerda's home every month, and that monthly payments were regularly received in 2007 and 2008. MacPherson further testified that when a September 2009 payment was missed, Cerda telephoned Central Mortgage to inform them that her nephew Santellan would be making the payment.

Cerda's own testimony was hindered by her admitted memory deficits regarding the transactions at issue. Her testimony was therefore not """"of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding""""" of fraud in the execution. (*Sonic Mfg., supra*, 44 Cal.App.4th at p. 466.)

Plaintiff fails to establish any valid basis for reversing the judgment entered in favor of Central Mortgage.

## II. Attorney fees

Plaintiff contends that, as the prevailing party on his claim to cancel the deeds of trust recorded by Yeh, he is entitled to attorney fees under Civil Code section 1717. He argues that the trial court erred by denying his postjudgment motion for attorney fees and that the trial court lacked jurisdiction to amend the June 10, 2014 judgment that initially awarded him attorney fees against Yeh.

Code of Civil Procedure section 1032 accords the prevailing party in litigation the right to recover costs. It provides that "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) The recoverable costs may include attorney fees incurred by the prevailing party if an agreement between the parties provides for the recovery of such fees, or a statute creates a right of recovery. (Code Civ. Proc., § 1021; *Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1405, disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4.) When authorized by contract, Civil Code section 1717

requires a court to award reasonable attorney fees as an element of costs to the prevailing party in an action on the contract. (Civ. Code, § 1717, subd. (a).) We review de novo the trial court's determination of the legal basis for an award of attorney fees. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 923.)

Civil Code section 1717, subdivision (a) provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." The trust deeds held by Yeh accord the beneficiary the right to sue for any past due indebtedness, "including reasonable attorney's fees."

Plaintiff's action to cancel the deeds of trust is an action "on a contract" within the meaning of Civil Code section 1717. "[I]t is difficult to think of an action that is more likely to be characterized as an 'action on a contract' than one in which the party bringing the action explicitly seeks to have the subject contract declared void and invalid in its entirety." (*Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 427.) Plaintiff's action against Yeh comes within the ambit of Civil Code section 1717.

Although Cerda was not a party to the trust deeds, she (and accordingly, plaintiff, as her successor in interest) is entitled to contractual attorney fees if Yeh would have been entitled to such fees had he prevailed in the action. (*Saucedo v. Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309, 315 (*Saucedo*).) In *Saucedo*, the Court of Appeal held that a nonassuming grantee who was not a party to the deed of trust was entitled to recover attorney fees under Civil Code section 1717 and the deed of trust's attorney fee provisions: "While the nonassuming grantee would not have been personally liable for payment of attorney fees under the note and deed of trust, the trustee and/or beneficiary would have been entitled to attorney fees under the provisions of the deed of trust had they prevailed, and these fees would have become part of the debt secured by

8

the deed of trust. To prevent foreclosure of his interest, the nonassuming grantee would have had to pay off the secured debt, including the attorney fees, by refinancing or otherwise . . . . This practical 'liability' of the nonassuming grantee is sufficient to call into play the remedial reciprocity established by Civil Code section 1717." (*Saucedo*, at p. 315, fn. omitted.) The circumstances here are analogous, and the court's reasoning in *Saucedo* applies to plaintiff's claim for attorney fees in this case.

The trial court denied plaintiff's attorney fee motion on the ground that plaintiff was not entitled to recover such fees "'on the contract' against a good faith encumbrance holder who loaned money and took a trust deed from one who had obtained title fraudulently from the owner and who transferred the property back to the true owner before the encumbrance holder recorded his trust deed." That standard, however, is not the proper one for determining plaintiff's entitlement to contractual attorney fees. (*Saucedo, supra*, 111 Cal.App.3d at p. 315.) The trial court's reasoning also contradicts its finding in the statement of decision that there was "no evidence as to the status of Mr. Yeh as a bona fide encumbrancer."

Plaintiff is entitled to recover attorney fees under Civil Code section 1717.[2]

## DISPOSITION

The order denying plaintiff's motion for attorney fees is reversed and the matter remanded to the trial court to determine the amount of fees recoverable under Civil Code section 1717. The judgment is otherwise affirmed. Central Mortgage is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:
_____, Acting P. J.     _____, J.
ASHMANN-GERST                                          HOFFSTADT

---

[2] In view of our holding, we need not address plaintiff's argument that the trial court lacked jurisdiction to amend the June 10, 2014 judgment initially awarding him attorney fees against Yeh.

9