Filed 2/15/24  Joaquin v. City of Los Angeles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD JOAQUIN,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CITY OF LOS ANGELES,<br><br>  Defendant and Appellant. | B318124<br><br>(Los Angeles County<br> Super. Ct. No. BC597336) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kristin S. Escalante, Judge.  Affirmed as Modified.

Hydee Feldstein Soto, City Attorney, Scott Marcus, Chief Assistant City Attorney, and Shaun Dabby Jacobs, Deputy City Attorney, for Defendant and Appellant.

Law Offices of Gregory W. Smith, Gregory W. Smith and Diana Wang Wells; Benedon & Serlin, Kelly R. Horwitz and Douglas G. Benedon for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff Richard Joaquin is a Los Angeles Police Department (LAPD) sergeant employed by the City of Los Angeles (City).  Joaquin filed a lawsuit against the City for retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.).  He alleged, in part, that the denial of a promotion and request for a lateral transfer was substantially motivated by his prior sexual harassment complaint and subsequent FEHA lawsuit against the City.  A jury found in favor of Joaquin on these claims and awarded him noneconomic damages.  On appeal, the City challenges two evidentiary rulings by the trial court, the sufficiency of the evidence to support the judgment, and the prejudgment interest awarded to Joaquin.  Joaquin refutes the City's contentions and requests that this court award him reasonable attorney fees on appeal.

We conclude the City's challenges to the evidentiary rulings and the sufficiency of the evidence have no merit.  However, we conclude the court erred in awarding prejudgment interest, and the judgment must be modified to remove that award.  Therefore, we affirm the judgment as modified.  We also grant Joaquin's request for attorney fees on appeal.

## FACTUAL BACKGROUND[1]

In 1998, Joaquin became an LAPD officer, employed by the City.

---

[1]     "Following the usual rules on appeal from a judgment rendered after a trial, we view the facts in the light most favorable to the judgment."  (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 346, fn. 2; see *Green Wood Industrial Co. v. Forceman Internat. Development Group, Inc.* (2007) 156 Cal.App.4th 766, 770, fn. 2 ["[w]e state the facts in the light most favorable to the jury's verdict, resolving all conflicts and indulging all reasonable inferences to support the judgment"].)

2

I.    *Prior Lawsuit*

In 2005, Joaquin filed a complaint with LAPD that a supervisor sexually harassed him.  The next year, he filed a lawsuit against the City for sexual harassment and retaliation under FEHA.  The lawsuit's proceedings ended in 2012.[2]

II.    *Sergeant I Promotion*

In 2012, Joaquin was promoted from the rank of Police Officer II to Sergeant I.[3]  His first assignment was to patrol in the Southwest Division. Joaquin's direct supervisor was Lieutenant II Alejandro Vargas (now Captain).  Captain I Alfred Pasos (now Commander) oversaw the division's patrol operations, while Captain III Paul Snell (now retired) oversaw operations of the entire division.

---

[2]    The parties stipulated that this information would be the only evidence presented to the jury about the prior lawsuit.  The jury was expressly admonished not to speculate as to the outcome of the prior lawsuit.  However, the City spent a good portion of its brief detailing the factual and procedural history of this litigation.  We refrain from considering information not presented to the jury.  (See Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant's opening brief must "[p]rovide a summary of the significant facts limited to matters in the record"].)

[3]    LAPD ranks are as follows: Police Officer I (training), Police Officer II, Police Officer III, Sergeant I, Sergeant II, Lieutenant I, Lieutenant II, Captain I, Captain II, Captain III, Commander, Deputy Chief, Assistant Chief, and Chief of Police.  A promotion to a higher rank is initiated by a civil service written examination and interview.  After applicants receive their score, they are placed on a list and promoted according to their place on the list when vacancies arise.  Advancement to a higher pay grade within the same rank is handled internally within LAPD and is not subject to civil service procedures.

3

Joaquin's duties as Sergeant I included responding to and investigating citizen complaints, investigating officers' use of force, evaluating employees, and acting as the Assistant Watch Commander for Vargas. The Assistant Watch Commander is a Sergeant II position. Joaquin was also assigned special supervisory duties by Vargas. Joaquin oversaw the University Park Task Force, a specialized unit of 30 officers who monitored the area in and around the University of Southern California campus. In addition, Joaquin provided supervisory oversight to the Gang Unit. These supervisory duties would usually be assigned to a Sergeant II.

As Sergeant I, Joaquin was consistently rated as meeting or exceeding expectations on his performance evaluations, and as recognized by his superior officers for his ability to motivate other officers, his "strong leadership, dedication & support," and as an "asset" to the Southwest Division. In 2013, Snell selected Joaquin as supervisor of the year for the Southwest Division. This award is given to a recipient who has been crucial to command staff and is prominent and respected within the division.

In 2014, Joaquin was transferred to the 77th Division and then transferred to the Hollenbeck Division in 2015.


III. *Housing Authority for the City of Los Angeles Sergeant II Position*

In 2015, a Sergeant II position became available in Southeast Division's Housing Authority for the City of Los Angeles (HACLA) Unit. Pasos, now Captain III, strongly encouraged Joaquin to apply for the position. As noted, he had been Joaquin's supervisor when Pasos held the rank of Captain I at the Southwest Division. Because of his current position, Pasos told Joaquin that he would go directly to the Command Bureau to recommend him for the position. Pasos informed Joaquin that Deputy Chief William Scott was in

4

charge of the South Division and would be the ultimate decisionmaker. Pasos told Scott that Joaquin "would do a good job" and that Pasos respected him.

Joaquin applied to the HACLA position and was placed in the outstanding pool of candidates. The Sergeant II position was ultimately given to Sergeant Paul Hong, who scored the same as Joaquin but had been promoted to Sergeant I a year and a half later than Joaquin.

Pasos told Joaquin he had not been selected for the HACLA position. Pasos explained that Scott said Joaquin's "past ghosts" were coming back to haunt him. Pasos was directed to select someone else for the position. Joaquin understood the reference to "past ghosts" to mean his prior lawsuit against the City. At trial, Scott did not remember saying the statement and Pasos denied telling Joaquin that Scott made the statement. Rather, Pasos claimed he was the one who told Joaquin words to the effect that "your past ghosts are coming back to haunt you."

IV.   *Transit Services Sergeant I Position*

In 2017, Joaquin saw an advertisement for a Sergeant I supervisor position with the Transit Services Division (TSD). There were 15 positions available. Although this position was neither a promotion nor advancement, it would have provided increased overtime opportunities for Joaquin.

At trial, Sergeant Rangel, a field supervisor for TSD, testified about the division's overtime process. He stated that a sergeant outside of TSD would have to apply for the division's overtime through a lottery system known as COAST. However, sergeants working in TSD "have an allocated one overtime shift a week," and only "anything above that," would have to be through the COAST system. Rangel testified that "no shifts are guaranteed;"

5

sometimes a sergeant would only get three overtime shifts a month, but rarely would a sergeant get only two shifts.

Joaquin applied for the TSD position. Sergeant Bridget Pickett performed the initial package review for the TSD applicants. Pickett requested the TEAMS II report,[4] the standard-based assessments, and the transfer application sheet for each applicant. Internal Affairs investigated any risk management issues which surfaced in an applicant review. After receiving all of the information, Pickett ranked the applicants as either outstanding, excellent, or satisfactory. She then submitted the applicant packages to Command Staff, which consisted of Deputy Chief Robert Green, Commander Anne Clark, and Captain Brian Pratt. Pickett had no further involvement in the selection process.

Joaquin was placed in the excellent pool. Only one or two applicants were placed above him in the outstanding category. Joaquin was not selected for the position.

The ultimate decisionmaker for selecting sergeants for the TSD position was Green. However, Green denied he had any responsibility for making the selection. Instead, he left the decision to Clark. Clark had previously worked in Internal Affairs and was assigned to the Workplace Investigation Section handling sexual harassment and retaliation claims at the time of Joaquin's prior lawsuit. Nothing in the information packet provided by Pickett disqualified Joaquin from consideration for the TSD position. Clark admitted Joaquin was more qualified for the position than the probationary sergeant applicant who was selected. Clark provided no

---

[4]    TEAMS II is a system to track potentially at-risk officers and includes such information as the officer's use of force, officer-involved shootings, traffic collisions, litigation, traffic stops, and citations, and is used by management whenever an officer wants to advance in rank.

6

explanation for why Joaquin was not selected for the position. Clark also admitted that she considered employees who sued the LAPD to be "organizational terrorists." She referred to employees who filed sexual harassment or retaliation complaints against the LAPD as organizational terrorists as well. Pickett had heard Clark use the term over 50 times.

## PROCEDURAL HISTORY

On October 9, 2015, Joaquin filed a lawsuit against the City for retaliation in violation of FEHA.[5]

The jury found that Joaquin's complaint of sexual harassment to LAPD in 2005 or his lawsuit against the City in 2006 constituted protected activity under FEHA. The jury found in favor of Joaquin on two of his four retaliation claims. As to the first claim, the jury found the City subjected Joaquin to an adverse employment action when it did not select him for the HACLA Sergeant II position. The jury found Joaquin's protected activity was a substantial motivating reason for the City's decision not to select him for this position. The jury found that the City's stated reason for selecting another candidate for this position was also a substantial motivating reason for not selecting Joaquin. The jury also found that the City would not have refused to select Joaquin had it not also been substantially motivated by retaliation. The jury found the City's conduct was a substantial factor in causing Joaquin harm.

As to the second claim, the jury found the City subjected Joaquin to an adverse employment action when it did not select him for the TSD Sergeant I

---

[5] Joaquin also brought a whistleblower retaliation claim (Lab. Code, § 1102.5), but he dismissed the claim before the matter was submitted to the jury.

7

position.  The jury found that Joaquin's protected activity was the only substantial motivating reason for the City's decision not to select him for the position.  The jury found the City's conduct was a substantial factor in causing Joaquin harm.

The jury awarded Joaquin $900,000 for past noneconomic loss, and $300,000 for future noneconomic loss, for a total award of $1.2 million.  The jury's verdict was entered on October 27, 2021.  Judgment on the special verdict was entered on November 19, 2021, at which time the trial court awarded Joaquin prejudgment interest from the time of the verdict.

The City timely filed a notice of appeal from the judgment.

## DISCUSSION

I.    *Evidentiary Challenges*

The City challenges two evidentiary rulings by the trial court.  We review evidentiary rulings for abuse of discretion.  (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447.)  We reverse only where the appellant shows that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice.  (*Ibid*.)  A miscarriage of justice results only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

A. *The Exclusion of Joaquin's 1991 Discipline*

1. *Background*

Joaquin filed a motion in limine to exclude any evidence of a 1991 personnel complaint against him that resulted in a 10-day suspension.  The complaint arose out of an incident where Joaquin agreed to engage in an act

8

of prostitution with a woman and then initially made false statements to law enforcement after the woman and her associates robbed him.

Joaquin sought to exclude the evidence on the grounds: (1) it was irrelevant under Evidence Code section 350 because none of the City's witnesses stated that they relied on this incident as a basis for rejecting him from any of the positions at issue in the lawsuit; (2) it was inadmissible character evidence under Evidence Code section 1101, subdivision (a); and (3) under Evidence Code section 352, any probative value was outweighed by the probability its admission would necessitate undue consumption of time and would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. In opposition, the City contended this evidence demonstrated Joaquin's "dishonest conduct," which in turn undercuts his overall credibility.

Joaquin requested, and the City agreed to, a hearing under Evidence Code section 402 (402 hearing)[6] to determine the admissibility of the 1991 discipline. The City stated the witnesses would be Vargas and Pickett. The court directed the City to refrain from making any reference to the 1991 discipline at trial until a ruling on the motion. The court then stated that the 1991 discipline was not admissible to "prove dishonesty by specific instances of [mis]conduct," unless there was testimony that Joaquin had a reputation for honesty. The court rejected the City's position that it could introduce this evidence to show dishonesty under Evidence Code section 787.[7]

---

[6] Evidence Code section 402 provides: "The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury." (Evid. Code, § 402, subd. (b).)

[7] Evidence Code section 787 provides: "Subject to Section 788, evidence of specific instances of his [or her] conduct relevant only as tending to prove a

9

During cross-examination of Joaquin and prior to the 402 hearing, counsel for the City questioned Joaquin about his TEAMS II report. The court stopped the proceedings and had a conversation with counsel outside the presence of the jury. The court stated that Joaquin's TEAMS II report contained information about the 1991 discipline and that the admissibility of the 1991 discipline was the basis for the upcoming 402 hearing. The court reiterated its ruling that the 1991 discipline would not be admissible to demonstrate a "specific instance of dishonest behavior" to impeach Joaquin's credibility. The court clarified that the 402 hearing would focus on whether a City witness would testify that he or she considered the 1991 discipline as a basis for rejecting Joaquin for a position.

The 402 hearing was held during Pasos's testimony, and Pasos was called to testify at the hearing. He testified that under state law, he was not permitted to consider the 10-day suspension in 1991, and he did not consider it. Counsel for the City stated he had no additional evidence to introduce at the hearing. Based on Pasos's testimony, the court sustained Joaquin's objection and excluded the evidence of the 1991 discipline under Evidence Code sections 350 and 352.[8]

---

trait of his [or her] character is inadmissible to attack or support the credibility of a witness."

[8] Evidence Code section 350 provides: "No evidence is admissible except relevant evidence." Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

After the court's ruling, counsel for the City argued Joaquin had "open[ed] the door" to his character for honesty during the direct examination of Pasos, citing the following testimony:

"[Joaquin's counsel]: Now, during the time that Sergeant Joaquin worked for you, you thought that he performed extremely well; right?

"[Pasos]: Yes.

"[Joaquin's counsel]: He had a good work ethic; right?

"[Pasos]: Yes.

"[Joaquin's counsel]: Honest?

"[Pasos]: Yes."

Counsel contended the 1991 discipline as it relates to Joaquin's dishonest conduct should be allowed in for impeachment purposes.

After reviewing the transcript, the court noted that the questioning only pertained to a specific time frame. The court also found the 1991 discipline was "too remote" under Evidence Code section 352. The court stated that the City could not "elicit information about specific instances of dishonesty" and "the only one that ha[d] been presented" was the 1991 discipline and "it's just too remote." The court allowed the City to question Pasos about Joaquin's general reputation for honesty during that period, but the City declined to do so.

During cross-examination of Pickett, the City again began to inquire into Joaquin's TEAMS II report. The court stopped the line of questioning and had a conversation with counsel outside the presence of the jury. At counsel for the City's request, the court reopened the 402 hearing to allow Pickett to testify about the 1991 discipline. At the hearing, Pickett testified, based on her custom and practice, the 10-day suspension on Joaquin's TEAMS II report would have prompted her to contact Internal Affairs.

11

Pickett also stated she would have written down all allegations alleged and sustained. However, Pickett would not have put the information she gathered from Internal Affairs in Joaquin's applicant package for the TSD position. Based on Pickett's testimony, the court found the City had not established the relevance of the 1991 discipline and sustained the objection to any further questioning of Pickett on Joaquin's TEAMS II report.

### 2. *Analysis*

The City contends that the trial court erred in excluding the 1991 discipline because every decisionmaker was aware of it in connection with each advancement and lateral selection process. This contention misses the mark. The City did not meet its burden in demonstrating at the 402 hearings that any of the decisionmakers actually relied on the 1991 discipline as a ground for not selecting Joaquin. (See Evid. Code, § 403, subd. (a).) Pasos testified he could not, and did not, consider the 1991 discipline for the HACLA Sergeant II position. Pickett testified that any information she would have learned from Internal Affairs about the 1991 discipline was not included in Joaquin's applicant package for the TSD Sergeant I position. Therefore, the court properly excluded evidence of the 1991 discipline as irrelevant. (Evid. Code, §§ 350, 352.)

In support of its position, the City states multiple times as fact that during the 402 hearing, Joaquin admitted Vargas considered the 1991 discipline for (an unrelated) Gang Unit Sergeant II position. Also, when Vargas asked Joaquin if there was anything in his background Vargas should be aware of [for the Gang Unit position], Joaquin said no. The City omits the context of these "statements." The City's record citations to support the "statements" refer to the following. Prior to the 402 hearing and outside the

12

presence of the jury, counsel for the City simply "represent[ed] to the court that Vargas will testify" to such statements at the upcoming hearing. Joaquin's counsel also noted that Vargas stated, at some point prior to trial, that he investigated the 1991 discipline when Joaquin applied for the Gang Unit position.

Contrary to the City's assertion, Joaquin never testified at the 402 hearing. And despite raising Vargas as a potential witness, the City did not call him to testify at the hearing. The City ultimately only called Pasos and Pickett to testify. Thus, neither Vargas nor Joaquin testified to these statements in any manner that would warrant our consideration. (See *Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425, 1433 [argument of counsel is not evidence].) We therefore decline to entertain the City's questionable assertions as to any statements attributed to Vargas or Joaquin regarding the 1991 discipline. We also note that Vargas was not a decisionmaker or involved in the decision to deny Joaquin the HACLA Sergeant II or TSD Sergeant I positions. Accordingly, Vargas's alleged statements surrounding the 1991 disciple have no relevance on appeal.

The City further argues that the trial court should have admitted the 1991 discipline to impeach Joaquin's credibility. The City explained that "Joaquin opened the door to questions about [his] reputation for honesty" during direct examination of Pasos. We are not persuaded and agree with the trial court that the line of questioning about Joaquin's honesty was limited to a specific timeframe, only when Pasos was Joaquin's supervisor. It is undisputed that Joaquin began working under Pasos in 2012 when he was promoted to Sergeant I. Because Joaquin did not open the door to questions about his reputation of honesty prior to that period, the court acted within its discretion in excluding the 1991 discipline as impeachment evidence. In

13

addition, we agree with the court that the 1991 discipline was "too remote" under Evidence Code section 352.

B. *The Admission of the "Past Ghosts" Statement Against Deputy Chief Scott*

1. *Background*

The City filed a motion in limine to exclude Pasos's statement to Joaquin that he did not get the HACLA Sergeant II position because Scott told him Joaquin's "past ghosts [were] coming back to haunt [him]." The City sought to exclude the statement on the grounds: (1) it was inadmissible hearsay under Evidence Code section 1200; (2) it was irrelevant under Evidence Code section 350; and (3) admission of the statement would create a danger of undue prejudice or misleading the jury under Evidence Code section 352. In opposition, Joaquin argued the statement was admissible as (1) Scott's state of mind (Evid. Code, § 1250), (2) a party admission (Evid. Code, §§ 1220, 1222), and (3) a prior inconsistent statement (Evid. Code, § 1235). The trial court denied the motion, finding the statement admissible as a party admission (Evid. Code, §§ 1220, 1222) and Scott's state of mind (Evid. Code, § 1250).

During direct examination, Pasos testified that he was the one who made the "past ghosts" statement, not Scott. During cross-examination, the City asked Pasos about what he meant when he (allegedly) made the statement to Joaquin that "his past ghosts [were] coming to haunt him." When counsel was called to a sidebar, the court asked for the City's offer of proof as to Pasos' testimony of the "past ghosts" statement. Counsel responded that Pasos would likely reference Joaquin's disciplinary history, specifically the 1991 discipline. The court stated it had already ruled, based

14

on Pasos's testimony at the 402 hearing, "he did not consider the 1991 [incident] in any way, shape, or form, in any recommendation that he made, in his deliberations, and that it would be illegal for him to do so." Therefore, the court did not allow testimony that Pasos was referring to the 1991 incident.

    2. *Analysis*

The City contends the trial court erred in admitting the "past ghosts" statement. The trial court admitted the evidence under two hearsay exceptions: a party admission (Evid. Code, §§ 1220, 1222) and state of mind (Evid. Code, § 1250). The City did not address the court's ruling that the evidence was admissible under the state of mind exception. "Because this ground was an independent basis supporting the court's ruling, the City's failure to discuss it forfeits its challenge to the ruling. [Citations.]" (*Briley v. City of West Covina* (2021) 66 Cal.App.5th 119, 133–134.) The City also contends the court erred by admitting the "past ghosts" statement without allowing the City to explain its context. The City relies on Evidence Code section 356, which provides, in pertinent part: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party." We conclude the City forfeited its claim that the proffered evidence (the 1991 discipline) was admissible under Evidence Code section 356 because counsel did not raise that basis for admissibility below. (*People v. Brooks* (2017) 3 Cal.5th 1, 50.)

II.     *Sufficiency of the Evidence*

The City contends substantial evidence does not support the jury's finding that the denial of the lateral TSD Sergeant I position constituted an adverse employment action.[9]  The City further contends substantial evidence does not support the jury's finding of a causal link between the protected activity and the City's adverse employment actions (denial of the HACLA Sergeant II and TSD Sergeant I positions).[10]

---

[9]     The jury did not find in favor of Joaquin on the remaining two retaliation claims related to his rejection of the Assistant Watch Commander Sergeant II position in 2014 and a 2015 sustained personnel complaint for neglect of duty against him.  As to the sustained personnel complaint, the jury found the City subjected Joaquin to an adverse employment action.  The jury found Joaquin's protected activity was a substantial motivating reason for the City's decision to sustain the personnel complaint.  The jury found that the City's stated reason for the sustained personnel complaint was also a substantial motivating reason for not selecting Joaquin.  However, the jury found the City would have sustained the personnel complaint against Joaquin "anyway at that time" had the City not been substantially motivated by retaliation.

The City allocates a significant portion of its brief arguing substantial evidence does not support the jury's finding that the 2015 sustained personnel complaint for neglect of duty against Joaquin was an adverse employment action.  However, the City does not articulate how this jury finding would undermine the judgment given the jury ultimately found this conduct was not a substantial factor in causing Joaquin harm.  Therefore, we decline to address this contention on appeal.

[10]     The City also challenges the sufficiency of the evidence of the jury's finding of a causal link between the protected activity and the 2015 sustained personnel complaint for neglect of duty against Joaquin.  As stated in footnote 9, the City does not articulate how this jury finding would undermine the judgment given the jury ultimately found the adverse employment action was not a substantial factor in causing Joaquin harm.  Therefore, we decline to address this contention on appeal.

16

1. *Standard of Review*

"When a party contends insufficient evidence supports a jury verdict, we apply the substantial evidence standard of review. [Citation.]" (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.) "We must 'view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. . . .' [Citation.]" (*Ibid.*) "'[N]either conflicts in the evidence nor '"testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [jury] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends."' . . . [Citations.]' [Citation.]" (*Lenk v. Total–Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) Therefore, "'when a [verdict] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [verdict]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the [jury].'" (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)

2. *Retaliation Claims*

To establish a prima facie case of retaliation under the FEHA, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); see also *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 472.) "Once an employee establishes a prima facie case, the employer is required to offer a

legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation "'"drops out of the picture,"'" and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz, supra*, at p. 1042.)

In the present case, the City challenges only Joaquin's prima facie case and does not address the second step of the retaliation analysis. And, because the City does not dispute that Joaquin engaged in a protected activity, our review is further limited to whether there was substantial evidence to support the jury's findings that (1) he was subjected to an adverse employment action as to the TSD Sergeant I position, and (2) there was a causal link between his protected activity and the adverse employment actions (denial of the TSD Sergeant I and HACLA Sergeant II positions).

### a. *Adverse Employment Action*

The City argues substantial evidence does not support the jury's finding that the denial of the lateral TSD Sergeant I position constituted an adverse employment action.

"'In order to meet the FEHA standard, an employer's adverse treatment must "materially affect the terms, conditions, or privileges of employment." [Citation.] "[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." [Citation.] Such a determination "is not, by its nature, susceptible to a mathematically precise test." [Citation.] "Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no

18

more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions . . . ." [Citation.] FEHA not only protects against "ultimate employment actions such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement . . . .'" [Citations.]" (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 91–92.) In the present case, Joaquin presented evidence that the TSD Sergeant I position and his current Sergeant I position did not offer entirely equal terms. Joaquin testified that the TSD position provided an opportunity for overtime, which would have been a great financial gain for him. Rangel also testified that a sergeant within the division would have one allocated overtime shift per week which would typically be three to four overtime shifts a month. Pratt then testified to the opportunities for advancement within the TSD as a Sergeant I. Based on this evidence, the denial of the TSD position adversely affected the terms, conditions, or privileges of Joaquin's employment, as well as adversely and materially affected his opportunity for advancement. Therefore, we conclude the jury's finding that the denial of the TSD Sergeant I position was an adverse employment action is supported by substantial evidence.

On appeal, City ignores most of the evidence referenced above. (See Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant's opening brief must "[p]rovide a summary of the significant facts"].) The City asserts there was no evidence that the TSD position would have given Joaquin more or

19

different responsibilities or improved his chances for advancement to a future Sergeant II position. This misrepresents the record. As stated, Pratt specifically testified to the contrary. In addition, the City claims Joaquin was the only witness to testify about the overtime opportunities in the TSD position. This is incorrect, as Rangel testified to these overtime opportunities. By omitting this evidence, the City flouts the established rules of appellate procedure. "'When appellants challenge the sufficiency of the evidence, all material evidence on the point must be set forth and not merely their own evidence. [Citation.] Failure to do so amounts to waiver of the alleged error and we may presume that the record contains evidence to sustain every finding of fact.'" (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 317.) In any case, we have already concluded that the record supports the jury's finding.

The City contends Pratt's testimony regarding the availability of overtime in the TSD contradicts Joaquin's testimony. While Pratt's testimony may contradict or undermine other evidence in the record, it is not dispositive when reviewing the jury's finding for substantial evidence. (See *Estate of Leslie* (1984) 37 Cal.3d 186, 201 [in reviewing for substantial evidence, all conflicts in the evidence should be resolved in favor of the respondent]; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of a single witness, including the plaintiff, can constitute substantial evidence]; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 889 ["'the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury'"].) Moreover, we can reasonably infer that the jury found Joaquin's and Rangel's testimony about the availability of overtime more credible. (*In re Cheryl E.*

20

(1984) 161 Cal.App.3d 587, 598 [we do not reweigh credibility and cannot reject testimony found by the jury to be credible].)

The City contends the trial court erred in overruling its hearsay and speculation objection to Joaquin's testimony regarding the availability of overtime in the TSD position. The City specifically cites to Joaquin's statement that he first learned about eligibility for overtime in the position by "speaking with the sergeants that work there and the lieutenants that work there." According to the City, the court overruled its objection based on the state of mind exception. The City spends almost the entirety of its sufficiency of the evidence argument discussing the impropriety of overruling this objection, contending it was inadmissible under the party admission exception. Once again, the City's characterization of the record is less than accurate. After Joaquin made the statement cited by the City, counsel for the City did not object, and direct examination continued. Thus, there was no evidentiary ruling regarding the overtime testimony, as claimed by the City in its brief. We conclude the City forfeited its challenge to this statement as counsel did not object below. (Evid. Code, § 353.)

### b.  *Causal Link*

The City argues substantial evidence does not support the jury's finding that there was a causal link between the protected activity and the adverse employment actions (denial of the HACLA Sergeant II and TSD Sergeant I positions). We disagree.

For purposes of making a prima facie case of retaliation, ""[t]he causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action

21

and allegedly retaliatory employment decision.'" [Citation.]" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69–70.)  A plaintiff in a retaliation case need only prove a retaliatory animus was at least a substantial or motivating factor in the adverse employment decision. (*George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1492.)  "Both direct and circumstantial evidence can be used to show an employer's intent to retaliate.  'Direct evidence of retaliation may consist of remarks made by decisionmakers displaying a retaliatory motive.  [Citation.]' [Citation.]  Circumstantial evidence typically relates to such factors as the plaintiff's job performance, the timing of events, and how the plaintiff was treated in comparison to other workers." (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1153.)

In attacking causation, the City focuses on the lack of temporal proximity between Joaquin's protected activity (2005 complaint and 2006 lawsuit, ending in 2012)[11] and the adverse employment actions (denial of the HACLA position in 2015 and TSD position in 2017).  But a lack of temporal proximity does not foreclose a finding of causation when the plaintiff can show an employer's intent to retaliate.  (*Porter v. California Dept. of Corrections* (9th Cir. 2005) 419 F.3d 885, 895 (*Porter*); *Coszalter v. City of Salem* (9th Cir. 2003) 320 F.3d 968, 977–978 ["a specified time period cannot be a mechanically applied criterion.  A rule that any period over a certain time is per se too long . . . would be unrealistically simplistic"].)

Here, we have no trouble concluding that the jury's findings of a causal link between Joaquin's protected activity and the adverse employment

---

[11]    We decline to entertain the City's argument that Joaquin's protected activity ended in 2010 as there was no evidence supporting that fact provided to the jury.  Rather, the parties stipulated that Joaquin filed his complaint in 2005 and then initiated the lawsuit in 2006, which ended in 2012.

actions are supported by substantial evidence. As to the HACLA position, evidence was presented that Pasos told Joaquin that Scott denied him the position because Joaquin's "past ghosts" were coming back to haunt him. Joaquin testified he understood the reference to "past ghosts" to mean his prior lawsuit. Despite Scott testifying that he could not remember making the statement, and Pasos taking responsibility for it, the jury ultimately believed Joaquin. As to the TSD position, Clark had no explanation for why Joaquin was not selected for the position over another, admittedly less qualified candidate. Clark also had worked in Internal Affairs at the time of Joaquin's prior lawsuit and considered any employee who filed a complaint or lawsuit against the LAPD to be an "organizational terrorist."

The City argues Joaquin's promotion to Sergeant I in 2012 and selection for supervisor of the year in 2013 were intervening events that broke any causal link. (See *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1110, fn. 6.) We are not persuaded as there was a valid reason for the delay between the protected activity and the adverse employment actions. (See *Porter, supra,* 419 F.3d at p. 895.) The decisionmakers (Scott and Clark) were not in an immediate position to retaliate at that point in time. Scott and Clark played no role in Joaquin's promotion from Police Officer II to Sergeant I or his selection for supervisor of the year. It was not until Joaquin applied to the HACLA Sergeant II and TSD Sergeant I positions that these decisionmakers had an opportunity to retaliate. Thus, the City's argument that the favorable employment actions broke the causal link is without merit.

III.    *Prejudgment Interest*

The City contends, and we agree, that the judgment should not have included an award of Civil Code section 3287 prejudgment interest.

Civil Code section 3287 permits prejudgment interest when the plaintiff "is entitled to recover damages certain, or capable of being made certain by calculation" and the right to recover such damages "is vested [in him] upon a particular day."  (Civ. Code, § 3287, subd. (a).)  "[T]he policy underlying the requirement for prejudgment interest where the damages are deemed 'certain' or 'capable of being made certain . . .' (Civ. Code, § 3287) is that in situations where the defendant could have timely paid that amount and has thus deprived the plaintiff of the economic benefit of those funds, the defendant should therefore compensate with appropriate interest."  (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 962; see *Children's Hospital & Med. Center v. Bontá* (2002) 97 Cal.App.4th 740, 774 [the test is ""whether *defendant* actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount""].)

Here, Joaquin's retaliation claims were never "readily ascertainable." (*Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 795.)  Rather, the jury decided the amount of the award for past and future noneconomic damages, which are not, by their very nature, capable of being made certain by calculation from a particular day.  (See Civ. Code, § 3287, subd. (a).)  Joaquin's counsel echoed this sentiment in closing argument, telling the jury that the amount of damages was not certain.  He stated that "there is no number that is set," and he does not "know how to put a number on this," but he would "make a recommendation of a number."

Thus, Joaquin was not entitled to prejudgment interest, and it must be removed from the judgment.

IV. *Attorney Fees*

Joaquin requests attorney fees on appeal under former Government Code section 12965, subdivision (b). The City does not address this request in its reply brief.

Former Government Code section 12965, subdivision (b) provides that in FEHA actions, "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . except where the action is filed by a public agency or a public official, acting in an official capacity." (Former Gov. Code, § 12965, subd. (b).) That section permitted a discretionary award of reasonable attorney fees and costs to the prevailing party, both at trial and on appeal. (*Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1404, disapproved on other grounds *in White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4; see *Gonzales v. ABC Happy Realty, Inc.* (1997) 52 Cal.App.4th 391, 394–395.) Effective January 1, 2022, the Legislature renumbered former subdivision (b) of Government Code section 12965 as current subdivision (c)(6). (Stats. 2021, ch. 278, § 7.) It continues to authorize the award of fees to the prevailing party in FEHA actions. (Gov. Code, § 12965, subd. (c)(6).) We grant Joaquin's request.

//
//
//
//

25

## DISPOSITION

The court is directed to modify the judgment to delete the prejudgment interest award. In all other respects, the judgment is affirmed. Joaquin shall recover his costs and attorney fees on appeal in amounts to be determined by the trial court.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

We concur:

CURREY, P. J.

MORI, J.

26